# Richmond

## HELEN GRIFFITH, BY, ETC. V. ELECTROLUX CORPORATION AND M. H. THACKSTON.

November 25, 1940.

Record No. 2254.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*A. T. Griffith* and *Erma Griffith Greenwood,* for the plaintiff in error.

*Horace M. Fox,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

Helen Griffith, an infant, by her next friend, Bessie Griffith, instituted this action against M. H. Thackston and the

Electrolux Corporation to recover damages for personal injuries received in an automobile accident. The Electrolux Corporation demurred to the evidence. The jury returned a verdict against both defendants. The trial court entered judgment on the verdict against M. H. Thackston, and sustained the demurrer to the evidence in behalf of the Electrolux Corporation. The plaintiff sought and obtained this writ of error to the judgment sustaining the demurrer.

The same excellent arguments made in this court seem to have been presented to the lower court. The Honorable A. C. Buchanan, trial justice, in a very able opinion, discusses the main issues so competently and thoroughly that we are content to adopt his opinion as our own.

"The question for decision in this case is as to the legal relation between the employer, Electrolux Corporation, and its employee, Morton H. Thackston. The question is presented by the demurrer to the evidence filed by the defendant, Electrolux Corporation. The plaintiff claims that the relationship at the time of the accident was that of master and servant. If so, the Electrolux Corporation is liable, and judgment should be for the plaintiff. The defendant, Electrolux Corporation, claims that the relationship was that of employer and independent contractor. If that is correct, the defendant is not liable and judgment should be for it.

"What that relation was is to be determined by the contract of employment. There is no conflict in the evidence, nor between the evidence and the contract of employment. The determination of the question is a matter of law on undisputed facts.

"The contract recites that the Electrolux Corporation manufactures and sells a cleaner and air purifier, with its accessories and supplies, and that Thackston has requested it to grant him a non-exclusive franchise to sell its products in the territory of the Roanoke Branch office. The evidence shows this territory covers that part of Virginia west of a point some twenty miles east of Appomattox, and some

parts of southern West Virginia. The pertinent parts of the contract provide:

"All orders should be taken on printed forms furnished by Electrolux, the terms of which should not be varied;

"Credit sales should be subject to approval of Electrolux;

"The sales price stated in the printed form of sale contract should not be varied, and no allowance made except for used cleaners as provided in the book of trade-in allowances issued by Electrolux, and for discounts for cash as provided in the sales contract;

"That Thackston would sell no other cleaners, except used cleaners taken in on sales;

"That Thackston would receive as his sole compensation, and in full of all his expenses, a specified commission;

"That Thackston would protect and indemnify Electrolux against any claims in contract or tort asserted by reason of the conduct of his business;

"That Thackston would not misrepresent any fact concerning Electrolux products, but might refer customers to any statements in descriptive literature published by Electrolux, and to its guarantee, but should not otherwise make any representation, warranty or guarantee respecting Electrolux products, and should not pledge the credit of Electrolux, or make any contract or assume any obligation on behalf of Electrolux;

"That Electrolux from time to time might submit to Thackston suggestions as to methods of handling and selling Electrolux products with a view to promotion sales, but Thackston could accept or reject such suggestions as he wished, and that Thackston might conduct his business and devote such time thereto as he deemed advisable;

"That Thackston would promptly remit to the Roanoke office all money and trade-in cleaners received by him in making sales;

"That the employment agreement should continue in force and effect and govern all relations and transactions between the parties until cancelled or terminated, and it

might be cancelled or terminated under the following provisions:

"1. By either party on thirty days notice without cause;

"2. By Electrolux, without notice, if Thackston violated any provision of paragraph 3, 8 or 10 of the contract. (Paragraph 3 provides for taking orders on printed forms, the sales on credit shall be subject to the approval of Electrolux, that the sales price should not be varied, and that Thackston would sell no other cleaners. Paragraph 8 provides that Thackston should not misrepresent any facts about the cleaners; and paragraph 10 provides that Thackston should promptly remit his collections and trade-ins).

"3. By Electrolux without notice if Thackston entered into a similar agreement with any other branch office.

"That all rights of Thackston under the agreement were personal and non-assignable.

"The evidence shows that Thackston took orders and delivered cleaners at the same time; that he did not repossess machines or make collections; that he was not required to have an automobile; that the one he was using at the time of the accident was his own, and he paid all operating expenses; that the company made no suggestions as to performing his work, and did not suggest any prospects for him to see; that he was not required to make any number of sales, or to work any particular time; that he used his own judgment and discretion as to when, where and how he would go, what means of transportation he would use, how much time he would work, or whether he would work at all. He had been using the automobile involved in the accident about a year, with the knowledge of M. E. Thackston, the branch manager, and kept it at the home of M. E. Thackston when he was there, and at other times M. E. Thackston did not know where he kept it, and that he was at M. E. Thackston's home sometimes over week-ends, sometimes every two or three weeks; that at the time of the accident he was taking two machines in his automobile to Grundy in the hope of selling them.

"Our problem is to apply the law to these facts and determine whether M. H. Thackston was a servant or an independent contractor.

■ "There are a multitude of cases on the subject, but none directly in point in Virginia. Most of them have been either discussed or referred to in the very thorough and helpful briefs filed by counsel. It would be as impossible as it is unnecessary to discuss all of them in this note of decision. Only a few may be quoted from to indicate what seems to be the favored rule and the reason for it. In deciding the question on facts similar to those of this case, many courts have reached the conclusion that the relation of independent contractor exists; a few have held that it is for the jury to say, while others have held that the relation is one of master and servant. Counsel in this case are not at odds as to the correct guide to follow. Both agree that the final test is the right of control. Their difference seems to lie in the activity that is subject to control. The plaintiff seems to contend that if the employer has the power to control the employee in the things involved immediately in the making of the contract of sale, the employee is a servant. The defendant asserts that the power of control must extend to the activities of the employee in the things to be done preparatory to the making of the contract of sale before the employee is a servant. And that is one of the points of departure in the decided cases.

"*Ideal Steam Laundry* v. *Williams*, 153 Va. 176, 149 S. E. 479, names the four elements to be considered in determining whether the relation of master and servant exists, and adds: 'But * * * the first, second and third of these elements are not essential to the relationship. * * * . The "power of control" is the most significant element * * * .'

■ "*Hann* v. *Times-Dispatch Publishing Co.*, 166 Va. 102, 184 S. E. 183, is to the same effect, but adds that which, is readily confirmed by an examination of the cases, that 'No hard and fast rule can be laid down for ascertaining whether the status is one or the other. It must be deter-

mined from the facts of the particular case in the light of well settled principles.' The court said further:

" 'In two recent cases we have said, "The ordinary test is this: 'Who has the power to control and direct the servants in the performance of their work?' " '

"This case held that under the facts the employee was a servant and within the provisions of the Workman's Compensation Act, but this statement from the opinion indicates the difference between that case and this:

" 'In the instant case the requisite "power to control" was unquestionably in the newspaper company. Both the route and the list of customers were its property. Hann could not deviate therefrom. He had to report at a certain time and complete his route by a certain hour. There is no suggestion that he had the right to sublet his work. The services were of a personal nature, and, if unsatisfactory, Hann was subject to discharge at the will of the supervisor. This was true of the forty-six other carriers who were employed on the same basis.'

"The case of *Press Publishing Co.* v. *Industrial Accident Comm.*, 190 Cal. 114, 210 P. 820, is cited, and in the quotation is this significant sentence: ' "One of the means of ascertaining whether or not this right to control exists is the determination of whether or not, if instructions were given, they would have to be obeyed." ' The contract in the case before us expressly provides that suggestions as to methods of handling and selling do not have to be obeyed.

■ "Blashfield's Cyclopedia of Automobile Law, 2d Ed., as quoted in defendant's brief, clearly states that the power of control must extend to the activities of the salesman preliminary to the making of the contract of sale before the salesman is a servant;

■ "Section 3079: ' * * * In ascertaining whether such driver is an agent or independent contractor, the controlling or principal test is generally stated to be as to whether or not the employer, using that term in a broad sense, has the right to control the details of the work to be done by the

servant or agent, or whether the latter represents the former only as to the results to be accomplished.'

"Section 3081: 'A salesman operating his own car who is not subject to control in the manner in which, or time during which, he shall work, is ordinarily an independent contractor, and the use of his own automobile for transportation in his territory is not unlawful or dangerous to others so as to affect his status as an independent contractor.

" 'So a city salesman, selling goods on commission, who has complete choice of the routes he will take within the territory assigned him, and who furnishes his own car for visiting his customers, is an independent contractor, and not a servant, so that the employer is not liable for injuries inflicted by the salesman's negligence in operation of his machine; and a salesman who operates an automobile at his own expense, whose movements are not controlled by the employer, except that he shall make his territory once each week, is, as to the operation of the car, an independent contractor.'

"*American Nat. Ins. Co.* v. *Denke,* from the Texas Commission of Appeals, and approved by the Supreme Court of Texas, as appearing in [128 Tex. 229, 95 S. W. (2d) 370, 373], 107 A. L. R. 409, quotes Section 250 of the Restatement of the Law of Agency by the American Law Institute, as follows:

" ' "Except as stated in section 251, [which the court says has no application to the case in hand] a principal is not liable for physical harm caused by the negligent physical conduct of an agent, who is not a servant, during the performance of the principal's business, unless the act was done in the manner directed or authorized by the principal or the result was one intended or authorized by the principal.

" ' "Comment:

" ' "(a) A principal employing another to achieve a result but not controlling nor having the right to control the details of his *physical movements* is not responsible for incidental negligence while such person is conducting the

authorized transaction. Thus, the principal is not liable for the negligent physical conduct of an attorney, a broker, a factor, or a rental agent, as such. In their movements and their control of physical forces, they are in the relation of independent contractors to the principal. It is only when to the relationship of principal and agent there is added that right to control *physical details as to the manner of performance* which is characteristic of the relationship of master and servant, that the person in whose service the act is done becomes subject to liability for the physical conduct of the actor." (Italics ours.)'

"In that case an automobile negligently operated by Saunders and owned by his wife caused personal injuries to the plaintiffs. Saunders was an insurance solicitor employed by the company. His status and the conclusion of the court as to his relation to his employer appear from these quotations from the opinion:

" 'We may add, however, that plaintiff in error seriously questions the statement that Saunders had frequently used his wife's automobile "with the knowledge and acquiescence of the appellant;" and may further add that there was nothing in the contract, either actually, or as construed by the parties, which in any way sought to control Saunders in his physical movements while doing his work, or directing that he should or should not travel by automobile, street car, cab, or on foot or otherwise. * * * .

" 'Without undertaking to comment upon the various terms of the written contract between the insurance company and Saunders, we think we may safely and confidently say that it is undoubtedly one of agency. Eliminating all matters of definition and distinction, it is obvious we think that Saunders was in common and everyday parlance an "insurance agent," and, as such, plaintiff in error was his principal. That he was not a "servant," within the usual significance of that term, seems to be obvious. * * * .

" 'We are brought, therefore, to the precise inquiry as to whether or not in this instance Saunders, in his capacity as agent, also occupied the further capacity of ser-

vant of the insurance company in the matter of operation of the automobile. It is settled that "the test of one's liability for the act or omission of his alleged servant is his right and power to direct and control his imputed agent in the performance of the *causal* act or omission at the very instant of the act or neglect." Putting the matter in a different way, it may be said that a master is liable for acts of his agent under the doctrine of *respondeat superior* only where the relationship of master and servant exists at the time and in respect to the very thing causing the injury and from which it arises. * * * .

" ' * * * . In our opinion, while there are numerous provisions in the contract which indicate control over Saunders, yet we think the control evidenced by such provisions related primarily to the contractual features of his employment, and to the attainment of ultimate results, and not to "physical details as to the manner of performance" of his movements while soliciting, collecting, attending meetings, etc. Falling short in this last particular, the control was not such as to create liability on the part of plaintiff in error for his negligent acts in the operation of his wife's automobile; although at the time he may have been engaged in the furtherance of the company's business. While there are decisions to the contrary, including one or more by the Courts of Civil Appeals of our state, yet the overwhelming weight of all recent decisions supports the foregoing statement. * * * .

" 'It would be superfluous to quote from these decisions, except to emphasize the controlling element of liability in such cases as these. This element consists in the fact that the agent or solicitor must be under the control of the principal as regards his physical movements in the performance of the contract in order to create liability upon the part of the principal for the agent's tortious acts. * * * .

" 'In the case of *Wesolowski* v. *John Hancock Mutual Life Insurance Company, supra* [308 Pa. 117, 162 A. 166, 87 A. L. R. 783], the Supreme Court of Pennsylvania used this language:

" ' "In the case before us the defendant had no control over Adams' .car. . It was in no position to require him to use it, for the use of his car was no part of his contract of service. It could not direct him when, where, or how to drive his car. It had no more control of Adams' car in which he transported himself than it had of the shoes he used in walking from patron to patron. The employer was indifferent as to whether Adams walked, rode a bicycle, or operated a motorcar to reach the people with whom he transacted business. If Adams had chosen to walk from person to person with whom he had his employer's business to transact and in walking he had negligently knocked over and injured another pedestrian, it could not reasonably be contended that his employer should respond in damages for Adams' negligent pedestrianism. So to hold would be to construe the phrase *'respondeat superior'* beyond its fundamental meaning and to carry its principle to absurd lengths and to consequences forbidden by every sound consideration of public policy." '

"In a note to the case of *Kennedy* v. *American National Ins. Co.* [130 Tex. 155, 107 S. W. (2d) 364], in 112 A. L. R. page 916, there is a collection of cases, two from California intermediate courts, two from Texas intermediate courts, one from Iowa and one from Oregon, holding that the employee is a servant and not an independent contractor on facts similar in some but not all respects to those of the case in hand; and there is a much more impressive collection of cases holding that the relationship is that of independent contractor where the facts are as they appear in this case. An examination of that note will disclose that the almost universal trend of the late decisions is to the effect that where the employer retains no control over the movements of the employee, that is, where he has no power to direct or control the activities of the employee preliminary to the actual negotiating of the contract of sale, but the employee uses his own car and is free to go as, when and where he pleases within his territory, such employee is an independent contractor and not a servant.

"*Nettleship* v. *Shipman,* from the Supreme Court of Washington [161 Wash. 292], 296 P. 1056; *James* v. *Tobin-Sutton Co.,* from the Supreme Court of Wisconsin [182 Wis. 36, 195 N. W. 848], 29 A. L. R. 457, and *Aldrich* v. *Tyler Grocery Company,* from the Supreme Court of Alabama [206 Ala. 138, 89 So. 289], 17 A. L. R. 617, are cases holding the employee to be an independent contractor on facts similar to ours; and there is a note to the last named case. 17 A. L. R. 621, in which several cases in point are digested.

"In *Manus* v. *Kansas City Distributing Corp.* [228 Mo. App. 905], 74 S. W. (2d) 506 [508], one Byrd was employed by the company to sell radios on commission in a certain territory. Byrd was the owner of the car involved in the injury to the plaintiff, and it appears that 'he drove the car anywhere he wished, without the company's direction or consent. That he was free to go anywhere in his territory that he wished, which he did, unless the appellant called his attention to some specific prospect of sale of which he (Byrd) was not informed. He was free to follow his own route in his own territory at his own time, and in his own way. That appellant had no control over his car and nothing to do with the repair or upkeep thereof. That he (Byrd) bought his own gasoline and oil and everything that was necessary to operate the car, at his own expense; that he was required to furnish all repairs necessary to the use of the car. That the sole remuneration for his (Byrd's) services was a commission of 5 per cent, on the gross sales, which he made.' The court held that Byrd was an independent contractor and that the appellant's demurrer to the evidence should have been sustained. The opinion states:

" 'In the case of *McCarthy* v. *Souther,* 83 N. H. 29, 137 A. 445, loc. cit. 450, the Supreme Court of New Hampshire made the following statement: "The decisive inquiry is whether the employer had any control over Souther in the management and operation of the latter's automobile. * * * Souther owned the car and was entitled to its exclusive possession. So far as appears, his contract of employment

gave his employer no right of direction for any use of the car by others, and he was to maintain and run it as his personal affair. The allowance made for expenses implied no right and no liability on the employer's part in respect to its maintenance and operation. No authority for the employer to direct Souther how to run the car is to be inferred from the relations between them, and the employer had no more charge or control over Souther's means and manner of transportation than if the travel had been by train. While the employer might assign the routes and time for Souther's trips with the car, it might not direct how the trips should be made, or how the car should be managed. The employer, having no right, if present, to direct Souther in the way he ran and used the car, is not liable for the way it was run and used. How the car was run was its affair only in the sense of its interest in the results obtained from proper operation, and that interest was no evidence of a right to run it, or to say in what way it should be run as to the details of operation. A directed verdict for the employer should have been ordered.." '

"*Greenwald* v. *Russell,* from the Supreme Court of Alabama [233 Ala. 502], 172 So. 895 [896], holds the employee in that case was not a servant, but an independent contractor, and states the rule in that jurisdiction to be: 'For the person to be a servant, the other party must retain "the right to direct the manner in which the business shall be done, as well as the result to be accomplished, or, in other words, not only what shall be done, but how it shall be done." '

"*Counihan* v. *Lufstufka Bros. & Co.* [118 Cal. App. 602], 5 P. (2d) 694 [695], is a case quite similar to this in its facts, in which the court held that a travelling salesman, working on commission, using his own automobile, which was operated at his own expense, and who was not subject to the control or direction of his employers as to his time, the use of the automobile, or his method of obtaining customers, and who was free to employ whatever methods he

should choose to secure orders, and was at liberty to come and go and do as he pleased, was an independent contractor. The court says this on the question of the right to terminate the contract;

" 'Nor does the fact that Beran's services were terminable at the will of either the firm or Beran alter the situation, for, as said in the decision last quoted from: "While the right to discharge a person at any time, without recourse, has been held to be a strong circumstance tending to show the subserviency of the employee (*Press Pub. Co.* v. *Industrial Acc. Comm.*, 190 Cal. 114, 210 P. 820), it is of less significance in a case of this sort, where it fits in equally with the theory of an independent association. In this regard both parties testified that the right to terminate their arrangement was a mutual one." '

"A well considered case is *Stockwell* v. *Morris* [46 Wyo. 1], 22 P. (2d) 189 [192], in which the facts are very similar to those in this case, and the court holds that the employee is not a servant. It appears that the question is of first impression in Wyoming, and the opinion reviews many cases and gives a clear and convincing discussion leading to the court's conclusion. It reviews also some of the cases holding to the contrary, and states:

" 'All of the foregoing cases may be distinguished from the case at bar in that the agreement between the parties was, or it was inferred, that the employee should devote all of his time to the business of the employer. We need not decide as to whether that fact should be of controlling importance or not.'

"The opinion also observes:

" 'There are a number of cases, more and more increasing in recent years, in which this view is taken, and in which it is held, as we think correctly, that under circumstances similar to those appearing in the case at bar the principal is not liable.'

"The Massachusetts court holds to the same effect as the decisions above quoted. See *Pyyny* v. *Loose-Wiles Biscuit Co.* [253 Mass. 574], 149 N. E. 541; *Wescott* v. *Young* [275

Mass. 82], 175 N. E. 153; *Khoury* v. *Edison Electric Illuminating Co.* [265 Mass. 236], 164 N. E. 77 [60 A. L. R. 1159].

"The plaintiff cites numerous cases in support of her contention that under the facts in this case the relation between Electrolux and Thackston was that of master and servant. Some of these cases may be distinguished on their facts from this case. Others cannot be clearly distinguished, but represent a minority view on similar facts.

"*Magnolia Petroleum Co.* v. *Pierce* [132 Okl. 167, 269 P. 1076, 1077], 61 A. L. R. 218, holds that the employee, under facts similar to ours, was a servant. It states that the true test is the right to control, but it interprets the contract of employment to mean that the employee 'was employed as agent by the defendant to sell its products under the direction and control of defendant at prices fixed by it, with his compensation to be paid on a percentage basis of the amount of sales made from the stocks furnished at the point of distribution fixed within the territory designated by defendant in which its business through its agent or his employees shall be conducted, and with the right of defendant to terminate such agent's employment at any time and for any reason. The contract therefore as a matter of law created the relationship of master and servant between the defendant and its agent, and we so hold.' Some difference from the facts of our case appear from this recital.

"*United States Fidelity & Guaranty Co.* v. *Lowry*, from the Court of Civil Appeals, Texas, 231 S. W. 818 [821], is quite similar to this case on its facts, but the court there held the employee to be a servant, and entitled to the benefits of the Workmen's Compensation Act. Vernon's Ann. Civ. St. Tex. art. 8306 et seq. The court seemed to hold the view that the definition of 'servant' given in the act was controlling. The case was decided in 1921, and the court makes the statement that 'we have been cited to no case which holds that a traveling salesman has been held to be an independent contractor, and we have found none.'

"*Borah* v. *Zoellner Motor Car Co.*, from the Springfield Court of Appeals of Missouri, 257 S. W. 145 [147], is hardly to be distinguished from this case on its facts, but the court took the view that 'while defendant did not in any way control Bridges in the details or the manner in which he made sales, it clearly had the right to do so. Bridges' agency was not one coupled with an interest so that it could not be terminated at will by either party. Had defendant given instructions to Bridges in relation to the details of making sales, and had he disregarded such instructions, there can be no question of defendant's right to discharge him and stop the service at any time. Had he been an independent actor acting for himself and not for defendant, then defendant could not interfere, and he could obey or disobey defendant's instructions as suited his own judgment or caprice. This he clearly could not do under his employment by defendant as detailed by the evidence in this case. Was he then, at the time of the collision with plaintiff, in his use of the truck of defendant, engaged in the service of defendant? We think most clearly so.'

"In *Hiner* v. *Olson* [23 Cal. App. (2d) 227], 72 P. (2d) 890 [893, 73 P. (2d) 945], the court held it was a jury question whether the traveling salesman, Olson, was a servant or an independent contractor. The court observed a distinction on the facts between it and the *Counihan Case, supra,* and other cases holding to the contrary in this respect: 'Those cases do contain some circumstances similar to the facts in the present case. But they do not contain all of the circumstances of this case which furnish persuasive evidence that the defendants held the exclusive right to control the actions of their commercial traveler in all respects except the time when he was required to work, and the fact that he drove his own car.'

"In *Singer Mfg. Co.* v. *Rahn,* 132 U. S. 532 [10 S. Ct. 175, 177, 33 L. Ed. 440], the court interpreted the contract to provide that the employee should give his whole time and service to the business of the company, and that the company reserved the right to prescribe and regulate not only

what business its employee should do, 'but the manner in which he shall do it; and might, if it saw fit, instruct him what route to take, or even at what speed to drive.'

"In *Peterson* v. *Brinn & Jensen Co.* [134 Neb. 909], 280 N. W. 171, the employee was required to furnish an automobile, and the employer had the right to direct him where to go.

"Citation of cases could be multiplied almost indefinitely. In many of those cited by the plaintiff there are distinguishing facts from which the courts reached the conclusion that the contract gives the employer the right of control, predicated in some instances on the right of dismissal, and in others on the terms of the contract construed to give the employer the right to control the details and methods of work; but the decided weight of authority, particularly in the more recent decisions, seems to me to be to the effect that on the facts shown in this case, Thackston was an independent contractor.

"Here the power of dismissal is not absolute, but conditioned on a violation of the terms of the contract by Thackston in one case, and in the other it is a mutual right, under which each party may terminate it without cause but only after thirty days' notice. The reasoning to the relationship of master and servant from the absolute power of dismissal is that thereby the employer has the right to require the employee to follow instructions, whether contracted for or not, or even against the contract. But under the contract in this case such reasoning is not permitted, because it is expressly stipulated that the employer has no right to require the employee to follow instructions other than those in the contract, which deal with results and not movements, and there is no absolute power of dismissal that would permit the employer to ignore this provision. By the terms of the contract no power is given to Electrolux, nor does it have such absolute power of dismissal as to permit it to usurp the authority, to control how or where Thackston should travel, what means of transportation he should use, what hours or days or weeks he should work, or

any other detail of his physical activity. It is a contract for results, and it does not give the employer the power to control the method or manner of obtaining those results.

"The theory on which the master is held liable for his servant's conduct is based on the right of the master, actual or potential, to control that conduct and to see to it that negligent acts which cause injury to others do not occur. If the relation between them does not give the employer that power, then he should not be held responsible for an occurrence over which he had no control. As said in *McCarthy* v. *Souther* [83 N. H. 29, 137 A. 450], above referred to, 'the employer, having no right, if present, to direct Souther in any way he ran and used the car, is not liable for the way it was run and used.' The Electrolux Corporation, under the contract in this case, had no right to require that Thackston either use an automobile or refrain from using one. It had no right to require that he should drive carefully or that he should refrain from driving carefully. It had no right to require that he drive at twenty miles an hour or that he refrain from driving at seventy miles an hour. The company could not discharge him for being negligent, except after thirty days notice. He might have a wreck every week, yet the company would have no unrestricted power of dismissal because of his bad driving. If it had no control over his use of the automobile it is not logical to say that it should be held liable for the way he used it.

"It is my opinion that the weight of authority and the better reasoning are to the effect that under the facts appearing in this case Thackston was an independent contractor and not a servant, and that the Electrolux Corporation is not responsible for his negligence in the incident that is the basis of this suit.

"The demurrer to the evidence will be sustained and judgment entered for the Electrolux Corporation."

One other assignment of error not specifically mentioned in the foregoing discussion is that the trial court erred in

permitting "the Electrolux Corporation to take inconsistent and contradictory positions."

This contention is based on a clause in the contract between the Electrolux Corporation and M. H. Thackston and an alleged admission. This clause reads: "The Representative also agrees to protect and indemnify Electrolux against any claims which may be asserted against it, either in contract or tort, by reason of the conduct of his business."

The inference drawn by plaintiff from this clause is that Thackston gave an indemnifying bond to protect the company from liability in tort. The mere fact that a sales representative agrees to indemnify his employer for any claim which may be asserted against it by reason of his conduct in effecting sales, or the agreement of such representative to furnish a bond for the faithful performance of his contract with the employer, does not affect the relationship of the parties. The existence of such indemnifying agreement does not create the relationship of master and servant or principal and agent. The non-existence of such an agreement does not change the relationship if the other essentials are present.

The contention that the Electrolux Corporation admitted its liability is based upon the statements made by M. E. Thackston, an uncle of M. H. Thackston and the branch manager of the corporation with an office in the city of Roanoke. On the day after the accident M. E. Thackston went to the scene of the accident, and, while there, instructed the owner of the automobile to have it repaired and to send the bill to the Electrolux Corporation. This was done and payment refused.

The contract of M. E. Thackston's employment was introduced in evidence. His powers and duties were limited to the conduct of the office in Roanoke for the purpose of checking in and checking out Electrolux machines, of receiving the monies due and remitting to the home office, and engaging representatives. It gave him no express or implied authority to bind his principal by promises or statements not connected with the duties defined.

 "The general rule is that in order to render admissions of corporate officers or agents admissible against the corporation, they must have been made while such officers or agents were acting for the corporation and within the scope or apparent scope of their authority. The declarations or admissions must be made in their official capacity, and not in their capacity as individuals." 20 Am. Jur. 512.

 "Neither are the admissions or statements of an alleged agent that he was the agent of another, evidence of that agency, but the fact must be proved by other evidence." *Fisher* v. *White,* 94 Va. 236, 26 S. E. 573. See *Moore* v. *Aetna Cas. & Surety Co.,* 155 Va. 556, 155 S. E. 707; *Royal Indemnity Co.* v. *Hook,* 155 Va. 956, 157 S. E. 414; *Humphreys & Son* v. *Broughton,* 149 Va. 789, 141 S. E. 764; *Bardach Iron & Steel Co.* v. *Charleston Port Terminals,* 143 Va. 656, 129 S. E. 687.

The judgment of the trial court is

*Affirmed.*