**Norfolk**

HAMILTON TRUCKING/HAMILTON TERMINAL CORPORATION

and

UNITED STATES FIDELITY AND GUARANTY

v.

JAMES E. SPRINGER

No. 1015-89-4

Decided August 28, 1990

Counsel

Philip E. Landrum (Landrum and Strong, on brief), for appellant.

John H. Klein (Rutter & Montagna, on brief), for appellee.

Opinion

**BAKER, J.**—This unusual appeal from a decision of the Industrial Commission of Virginia (commission), although jointly made in the name of Hamilton Trucking Company, a division of Hamilton Terminal Corporation (Hamilton), is in fact an appeal made on behalf of Hamilton's insurance carrier, United States Fidelity and Guaranty (insurer). The issue presented is whether the record contains sufficient facts to support the commission's finding that James E. Springer (claimant) was an employee of Hamilton, and not an independent contractor, at the time of his injury. The commission found that he was an employee and made an award of benefits in his favor for an injury he sustained on August 20, 1988.

When this matter was presented to the deputy commissioner (deputy), Hamilton and its insurer were not in agreement as to whether claimant was an independent contractor or an employee. The record discloses that Hamilton intended to extend its insurance coverage for workers' compensation benefits to claimant. For that reason, Hamilton does not join in this appeal. In consideration of the issue presented by this appeal we are guided by the principle that employers cannot simply designate persons as employees or independent contractors; the actual contract of employment determines whether the service is being performed by an employee or an independent contractor. The Workers' Compensation Act (Act) leaves the determination of the nature of the relationship to the common law. *See Crowder v. Haymaker*, 164 Va. 77, 79, 178 S.E. 803, 804 (1935).

We need not recite the details of the injury as the parties agree that if the record establishes that claimant was an employee within the meaning of the Act, the award of the commission must be affirmed. Stated in a light most favorable to claimant, who prevailed below, the record discloses that Hamilton's business "is the inland haulage of full containers" from the Norfolk area to other parts of the United States. Hamilton owns trailers but no tractors with which to perform this service. It contracts with individuals who own tractors to pull the trailers loaded with containers Hamilton has contracted with third parties to haul to other areas. These individuals are known as owner-operators and the contracts are referred to as "lease-agreements." From time to time the number of separate agreements with individual owner-operators varied from as few as five to a maximum of eighteen. Every lease-agreement at Hamilton was between "Hamilton Trucking and the owner-operator for his services and his vehicle" and "covers the employ of that owner-operator." The owner-operator could reject all loads if he wanted to; however, if he did so consistently, the agreement would be terminated because he would not be providing the service Hamilton required. The lease further provided that Hamilton would deduct from the sums due the owner-operator "a certain percentage" to cover him "with workmen's compensation insurance" as it was Hamilton's "intent . . . to give him workmen's compensation coverage." John Vitolo, Hamilton's comptroller, testified that a prospective owner-operator would be told that "Hamilton Trucking, Division of Hamilton Terminal Corporation, will deduct a certain percentage of your pay on a weekly basis, and we will supply you with workmen's compensation insurance through our insurance company . . . (but) only while you're in our dispatch."

Fred Hockenjos, a witness for claimant, identified himself as an insurance account executive from Madison, New Jersey. His job was to service the "property and casualty insurance for the parent company (Hapag-Lloyd America, Staten Island) of Hamilton Terminal Corporation." He stated that in May 1984, Hapag-Lloyd America "wanted to provide the workers' compensation for the owner-operators, and were deducting monies from the monies paid to those drivers to pay for that insurance." The parent company previously was insured by Travelers Insurance Company; however, on April 1, 1988, Travelers cancelled the policy because of the high loss ratio. Upon being cancelled, Hamilton applied to

the Virginia assigned risk insurance program for a company to provide its insurance requirements. As a result of that application, insurer was required to cover Hamilton with the workers' compensation insurance. Insurer denies that coverage was extended to the owner-operators. The policy issued pursuant to the Virginia assigned risk program was effective only to the Virginia operation. The parent company was assigned separate policies by each of the other states in which Hamilton has terminals. Hockenjos was not acting as agent for insurer when insurance coverage was issued by insurer as required by the Virginia assigned risk program.

Claimant testified that he was an owner-operator of a truck "working with, if not for, Hamilton Division of Hamilton Terminal Corporation" on August 20, 1988 when he was injured. He stated that at the time he "was an independent owner-operator . . . who was employed by Hamilton Trucking as an individual — as a truck driver, as well as . . . my tractor."

On each work day claimant would call Hamilton's terminal manager to see if there was a container for him to haul "anywhere in the United States." If so, he would "pick up the dispatch papers and the load, and deliver it." When claimant would pick up a load at the Norfolk terminal he would not report to a supervisor. He would go only to the terminal manager, obtain his load and papers, and proceed to his destination point or, at his own option he could reject the assignment. In fact, he did not have to call in, although if Hamilton was overloaded with containers to carry "they would be calling" him. Claimant further stated: "Hamilton Trucking is not under forced dispatched; which means that we have the option to either say yea, or nay, or no period." Beyond a twenty-five mile radius of Norfolk claimant was paid $.72 per mile, more per mile for hazardous material loads. He was paid weekly, on Fridays. Hamilton made no deductions from claimant's pay for social security; did not withhold state or federal income tax; and made no deduction for hospitalization insurance or insurance for his tractor. Any advance made to claimant and "workmen's compensation" would be deducted from his pay. Each owner-operator paid his own liability and comprehensive insurance on his tractor; however, if a third-party claim was made against him while on Hamilton's business Hamilton's insurance would cover him. Claimant testified that if he was injured, his "workmen's compensation supposedly is supposed to cover that" because

on the back of his contract "it states that Hamilton Trucking would take out a certain percent of my pay to insure that I would have workers' compensation on me."[1] When on the road he had to pay his own personal expenses, as his compensation was based solely on trip mileage. When he was hauling for Hamilton, he alone selected the route he would take. Hamilton provided the destination and expected time of arrival but no en route supervision or instruction as to how he was to achieve the result he contracted to perform.

■ Hockenjos, Hamilton's insurance agent, testified that claimant was not an employee of Hamilton and that the question was a matter of contract. The general rule is that the relationship is to be determined by the contract of employment. *See Griffith v. Electrolux Corp.*, 176 Va. 378, 382, 11 S.E.2d 644, 646 (1940). Neither Vitolo, who testified in support of claimant and Hamilton, nor claimant produced a copy of the lease contract. Hamilton admitted that no copy of the lease-agreement was filed with the Assigned Risk Bureau when application for the assignment of an insurance company was filed. While in the opinion of the majority of the commission these writings were not necessary to their opinion, it leaves us with an unsatisfactory record to review.

■ No definite rule has been established to ascertain whether the relationship with the principal is that of employee or independent contractor. It must be determined from the facts of the particular case in the light of well settled principles. *Id.* at 385-86, 11 S.E.2d at 647. While several tests are applied to make the determination, the final test is the right of control. *Id.* at 385, 11 S.E.2d at 647. The history of the Act clearly shows that the legislature did not have in mind as beneficiaries any persons other than those commonly understood as falling within a contractual relationship of employer and employee. *Crowder*, 164 Va. at 79, 178 S.E. at 804. The classification of a person as an employee or an independent contractor is governed, not by any express provision of the Act, but by common law, and we must look to it in determining who is an employee. *Richmond Newspapers, Inc. v. Gill*, 224 Va. 92, 97, 294 S.E.2d 840, 843 (1982).

---

[1] During the course of claimant's testimony before the deputy, claimant stated that he had a copy of the lease contract at home and, pursuant to the direction of the deputy advised that he would file it with the commission on the following day. There is no explanation why it was not filed and made a part of this record.

The Workmen's Compensation Law does not undertake to change, as between themselves, the rights of owners and independent contractors. This statute leaves that relationship as it was at common law and we must look to it in determining who is master and who is servant.

The rule which we have cited with approval in *Baker v. Nussman*, 152 Va. 293, 147 S.E. 246, 249, is thus stated: "In the law of master and servant the principles of the common law determining when this relationship exists, are well settled. At common law, upon the question of whether the relationship of master and servant exists, there are four elements which are considered: (1) Selection and engagement of the servant; (2) payment of wages; (3) power of dismissal; and (4) the power of control of the servant's action.

*Crowder*, 164 Va. at 79, 178 S.E. at 804.

But . . . the first, second and third of these elements are not essential to the relationship . . . . The "power of control" is the most significant element bearing on the question . . . . 'In many of the cases the power of substitution or discharge, the payment of wages, and the circumstances bearing upon the relation, are dwelt upon. They, however, are not the ultimate facts, but only those more or less useful in determining whose is the work and where is the power of control.

*Stover v. Ratliff*, 221 Va. 509, 512, 272 S.E.2d 40, 42 (1980).

In *Stover*, the issue was whether the claimant, who used his tractor to pull the employer's trailers, was an employee or an independent contractor.

Where, as here, the work consists of the hauling of property, "the question of who furnishes the truck is subordinate to the question of who has the power of general control of the employee's actions." Finally, whether there exists a relationship of master and servant, rather than one of independent contractor or subcontractor, is a question of law and not of fact.

\* \* \*

. . . the record does not support the conclusion that Stover retained the power of general control of the drivers' actions. Obviously, Stover had the power to designate the point of delivery of the cattle purchased for Taylor. Beyond this power, however, only speculation can supply the other indicia of control required for a determination that the drivers were employees within the meaning of the Workmen's Compensation Act.

*Id.* (citations omitted). The record before us contains insufficient evidence to support the commission's conclusion that Hamilton retained the power of control of claimant's actions. As in *Stover,* Hamilton had the power to designate the point and time of delivery. However, the record fails to establish that Hamilton supervised the performance of claimant's work or had any right to dictate how claimant would perform his assigned task. In the absence of the lease-agreement, only speculation can supply other indicia of control. Thus, insofar as the record reveals, claimant was free to produce a given result without being in any way controlled as to the means or method by which he attained that result.

This record, as incomplete as it is, discloses some facts from which it might be inferred that there was an employer-employee relationship. For example, Vitolo stated that claimant was required to call in daily (although claimant himself disputed this); claimant's vehicle while on dispatch was covered by Hamilton's liability insurance; Hamilton intended that he be treated as an employee so as to be eligible for workers' compensation benefits; Hamilton could revoke the lease-agreement if claimant failed to call in daily; Hamilton withheld funds from claimant's pay to "cover him" with workers' compensation insurance;[2] claimant thought he was employed as a truck driver; and when on dispatch for Hamilton, after delivering his load, he was required to get Hamilton's permission before returning with someone else's load.

On the other hand, evidence contained in the record established that claimant could accept or reject any trip he was offered; he was required to pay his own expenses while on a dispatch; no social security was paid on his behalf by Hamilton and none was

---

[2] The mere fact that Hamilton deducted sums for compensation insurance from sums due claimant cannot be said to have altered the nature of the relationship between the parties. *See Hampton v. McCord,* 141 Ga. App. 97, 232 S.E.2d 582 (1977).

deducted from his pay; no state or federal payroll taxes were withheld; he could choose any route he desired and without supervision or instruction use any means or method to accomplish the result contracted for; and he reported to a terminal manager to obtain the papers, destination point and time for delivery of his load.

This record discloses that Hamilton had no power to dictate the means and method by which claimant's tasks would be accomplished. This was left to claimant's decision and discretion. It is clear that Hamilton looked only to claimant for results; therefore, claimant was an independent contractor, not entitled to workers' compensation benefits.

For the reasons stated, we hold that claimant was not an employee within the meaning of Code § 65.1-4; accordingly, the award of the Industrial Commission appealed from is reversed and a final judgment denying compensation benefits is entered in favor of the employer.

*Reversed and final judgment.*

Koontz, C.J., and Barrow, J., concurred.