## CIRCUIT COURT OF THE CITY OF NORFOLK

Steffan et al.

v.

Freemason Assocs., Inc., et al.

Case No. (Law) L01-1342

Khoury

v.

Freemason Assocs., Inc., et al.

Case No. (Law) L01-1343

October 10, 2002

BY JUDGE JOHN C. MORRISON, JR.

This issue comes before the Court on Defendant K.B.B. Corp., d/b/a RE/MAX's (hereinafter "RE/MAX") Brief in Support of its Positions. In its brief, RE/MAX contends that it is not a proper party because Hall was not acting as its agent when pursuing the sale of the 313 Freemason Condominium units and Hall had no apparent authority. RE/MAX argues that, if Hall is its agent, he is a special agent of RE/MAX and apparent authority is, therefore, not applicable in this situation. In the alternative, RE/MAX asserts that it is not responsible for the acts in question because Hall had a personal interest in the sale of the condominium units and Hall's knowledge is, therefore, not imputable to RE/MAX as principal. RE/MAX also asserts that §§ 54.1-2131 and 54.1-2142 of the Code of Virginia prevent Plaintiffs from

holding RE/MAX liable unless they prove that RE/MAX has actual knowledge of the material defects the Plaintiffs claim they were obligated to disclose. RE/MAX again claims that Hall's knowledge is not sufficient to hold them liable under this section. RE/MAX asserts that it is not liable for false advertising violations because it is not responsible for the advertisements that Hall and Dana used to promote the sale of the condominium units. Finally, RE/MAX argues that certain modifications that Khoury made to the contract of sale indicate that he did not rely on the representations, and he, therefore, has only breach of contract claims to which RE/MAX is not a proper party because of lack of privity. For the reasons stated below, the Court rejects RE/MAX's contention that it is not a proper party in this lawsuit.

In Virginia, a trial court may enter summary judgment only if no material fact is genuinely in dispute. Va. Sup. Ct. R. 3:18. In considering a Motion for Summary Judgment, a trial court must adopt those inferences from the facts that are most favorable to the non-moving party, unless the inferences are forced, strained, or contrary to reason. *Dickerson v. Fatehi*, 253 Va. 324, 327 (1997). Summary judgment is authorized only where the moving party is entitled to judgment as a matter of law. *Id.*; Michie's Jur., *Judgments & Decrees*, § 217.3, at 338, 344.

*I. RE/MAX Corp. asserts that it is not liable to Plaintiffs Khoury and Steffan because Hall is an independent contractor rather than an agent of RE/MAX.*

There are four factors that must be considered in determining whether a person is an agent or an independent contractor. *Hadeed v. Medic-24*, 237 Va. 277, 288 (1989). These factors are: "(1) selection and engagement of the servant, (2) payment of compensation, (3) power of dismissal, and (4) power of control." *Id.* Power of control is the controlling factor in the determination. *Id.* at 288.

"Generally, whether a person is a servant or an independent contractor is a question of fact for a properly instructed jury." *Id.* at 288. However, it is a question of law if (1) the evidence leads to only one conclusion, *Id.*, or (2) "the question of agency rests solely upon written documents." *DNM, Inc. v. S. H. Clark & Sons Roofing, Inc.*, 1992 Va. LEXIS 102, *3 (Va. S. Ct. 1992). Defendant RE/MAX contends that Hall's relationship with RE/MAX is a question of law because the question of agency rests entirely on the interpretation of the "Independent Contractor" contract between RE/MAX and Hall. (K.B.B. Brief in Support of Positions (hereinafter "K.B.B. Brief"), at 5.)

The Court agrees with RE/MAX's contention that the question in this case is based entirely on documents. Those documents are the "Independent

Contractor Agreement" (hereinafter "ICA"); the "Independent Contractor Addendum" (hereinafter "ICAA"); the Standard Listing Agreements between RE/MAX Central Realty and Freemason Associates, Inc. (hereinafter "Listing Agreements"); and the "RE/MAX Policies and Procedures Manual" (hereinafter "RE/MAX Manual"). The Listing Agreements are controlling in this situation because RE/MAX identifies its relationship with Hall in the agreements. The Manual is also controlling. Although the Manual itself proclaims that "[n]othing in this Manual is to imply that there is an employer/employee relationship between" RE/MAX and Hall and that the provisions in the manual are guidance and not specific requirements, the Court finds that the Manual is binding on Hall and, therefore, is a document that controls their relationship. (RE/MAX Manual, Special Notice, at 2.) The ICAA provides that Hall's use of the RE/MAX trademarks is "expressly made contingent upon ... [Hall's] observance of and adherence to the standards of proper use and guidelines promulgated and from time to time amended by RE/MAX International, Inc. ... [and, Hall's] adherence to and satisfaction of professional performance standards and service quality controls promulgated and from time to time amended by RE/MAX." (ICAA ¶ 6B.) Because the Manual is guidance for Hall and RE/MAX's other associates regarding maintaining professionalism, it falls into the standards and guidelines referred to above. (RE/MAX Manual, Intro.)

Hall's statements that he is the agent of RE/MAX are not evidence that he is an agent. *Griffith v. Electrolux Corp.*, 176 Va. 378, 399 (1940). A salesperson's agreement to indemnify his employer for any claim that might be asserted against the employer because of the actions of the salesperson does not affect the relationship of the parties. *Id.* at 398. Instead, agency must be proven by other evidence. *Id.* at 399. The Court must look at the degree of control RE/MAX exercised or is entitled to exercise over Hall to determine whether he was an agent of RE/MAX. *Murphy v. Holiday Inns, Inc.*, 216 Va. 490, 492 (1975).

> When an agreement, considered as a whole, established an agency relationship, the parties cannot effectively disclaim it by formal "consent." "[The] relationship of the parties does not depend upon what the parties themselves call it, but rather in law what it actually is."

*Id.* (quoting *Chandler v. Kelly*, 149 Va. 221, 231 (1928) (alteration in original).

The ICA and the ICAA together govern the relationship between Conley Hall and RE/MAX. Defendant RE/MAX asserts that the following provisions

of the foregoing documents establish the independent contractor status of Hall: Hall receives 100% of the commission he earns on a sale (ICA ¶ 6; ICAA ¶¶ 2, 5); RE/MAX does not pay Hall any money other than those commissions (ICA ¶ 7); Hall is required to indemnify RE/MAX for damages from Hall's conduct (ICA ¶ 9; ICAA ¶ 3C); Hall pays his own employment taxes (ICAA ¶ 1B); Hall determines the amount of time and energy he will spend as a real estate salesperson (ICAA ¶ 1A); the ICA and ICAA state clearly that Hall is an independent contractor, not an agent (ICA; ICAA ¶ 1); and Hall is entitled to take his listings with him at the termination of his relationship with RE/MAX. (ICA ¶ 10.)

It is also noted that the following provisions from the RE/MAX Manual appear to support the claims of RE/MAX that Hall is an independent contractor: Hall negotiates his own commission, although RE/MAX recommends that the commission is never less than 6% (RE/MAX Manual ¶ 1.4); Hall is responsible for his own personal advertising (RE/MAX Manual ¶ 15A); and RE/MAX agents set office administration procedures by majority vote if necessary. (RE/MAX Manual ¶ 15M.)

The question whether Hall is an agent turns on the degree of control RE/MAX exercises over the manner in which Hall completes his job. *Hadeed,* 237 Va. at 288. The agreement between the parties requires Hall to work diligently in the sale and lease of all real estate listed with RE/MAX that are made available to Hall (not only Hall's listings) and to solicit additional listings and clients "in the name of Broker [RE/MAX]." (ICA ¶ 4.) The ICA also requires that all suits for commission be brought in the name of the broker (in accordance with state law). (ICA ¶ 8.) It is the Broker that resolves disputes between salespersons. (ICA ¶ 11.) These provisions, taken together, indicate that the salespersons were acting for the benefit of RE/MAX rather than for themselves.

In the ICAA, there are provisions that purport to control the manner in which Hall fulfills his responsibilities. Hall is not permitted to have an off-site office without prior permission from RE/MAX. (ICAA ¶ 1C.) RE/MAX receives the commission and then transmits the commission to the salesperson, setting off any amounts that the salesperson owes to RE/MAX. (ICAA ¶ 2.) The ICAA states that Hall will "act as a real estate agent subject to … the supervision/control of RE/MAX and/or the licensed broker(s) responsible for the RE/MAX office management." (ICAA ¶ 3A.) Hall is required to participate in RE/MAX's insurance program rather than purchasing his own insurance. (ICAA ¶ 3B.) If Hall hires a personal assistant, RE/MAX must be a party to their employment contract. (ICAA ¶ 3E.)

In RE/MAX's Policy and Procedures Manual, there are many provisions that control the manner in which Hall fulfills his responsibilities. RE/MAX states that salespersons may not take cash deposits and all deposits must be checks made out to RE/MAX. (RE/MAX Manual Intro ¶ 6.) In the Manual, many provisions state that an agent is *not* to do something or *must* do something. "An agent is NOT to fill out the Seller disclosure form." (RE/MAX Manual ¶ 1.7 (emphasis in original).) "All buyers and sellers *must* be offered the opportunity to purchase a home warranty program so that we may minimize our liability." (RE/MAX Manual ¶ 1.9 (emphasis added).) An "associate *may not* advertise a specific commission rate." (RE/MAX Manual ¶ 1.13 (emphasis added).) "Referrals *must be* forwarded to other RE/MAX firms if there is a firm in the area." (RE/MAX Manual ¶ 11.1 (emphasis added).) The Manual also regulates the associates regarding cold calling (RE/MAX Manual ¶ 1.11), use of the internet and email (RE/MAX Manual ¶¶ 1.19, 1.21), and personal dress (RE/MAX Manual ¶ 2.1), smoking (RE/MAX Manual ¶ 2.2), and drinking (RE/MAX Manual ¶ 2.3) while with clients. The Manual also requires the salespersons to call into the office and speak with the client coordinator at least twice daily as well as notifying the client coordinator of their locations. (RE/MAX Manual ¶¶ 2.4, 15C, 15D.) All files become company files, and salespersons must create their own files if they want them. (RE/MAX Manual ¶ 5.1.) If an associate steals another associate's customers or clients, the "stealing" associate is subject to immediate dismissal. (RE/MAX Manual ¶ 7.) Paragraph 19 of the Manual is informative. It states:

> The potential of legal liability forces RE/MAX Central Realty to prohibit the business use of cell phones while driving. This includes hands-free devices. It is our policy that if you need to use a cell phone while in your car, that you pull safely off the road and stop the vehicle before making your call.

(RE/MAX Manual ¶ 19.) This provision reaches the level of micro-management of a salesperson's activities and shows how RE/MAX controls its salespersons' day-to-day activities with an eye on RE/MAX's liability for the actions of the salespersons.

The Listing Agreements are also informative. The Agreements are signed by the Listing Firm, RE/MAX, by its agent, Conley Hall. (Listing Agreements, Signature Section.) The introduction to the agreements state:

> The Standard Listing Exclusive Right to Sell Agreement ("Agreement") is entered into by and between the undersigned

seller(s) ("Seller") and the undersigned listing firm ("Listing Firm"). Seller grants to Listing Firm the exclusive and irrevocable right and privilege during the term of this Agreement to sell the real property described below ("Property") for the price, and upon the terms and conditions more particularly set forth below.

(Listing Agreements Intro.) The Agreements also state, "Listing Firm shall act as Seller's Agent." (Listing Agreements ¶ 5A.) The agreements provide that the brokerage fee will be paid to the Listing Firm, not Conley Hall. (Listing Agreements ¶ 6.) The agreements also require that the Seller indemnify the Listing Firm, stating:

> Seller represents and warrants the accuracy of all representations made by Seller to Listing Firm in regard to the Property ... and Seller agrees to indemnify and hold Listing Firm harmless against any and all damage, liability, or expense of any kind whatsoever arising from the inaccuracy of or Listing Firm's reliance upon such representations.

(Listing Agreements ¶ 10(vi).) All of the provisions above indicate that the Seller (Freemason Associates, Inc.) is entering into an agreement with the Listing Firm. Conley Hall is acting as an agent and facilitating the contract. Because of these provisions and the provisions in the ICA, ICAA, and RE/MAX Manual, the Court finds as a matter of law that RE/MAX does exercise substantial control and supervision over Conley Hall, and, therefore, Conley Hall is an agent of RE/MAX.

Defendant RE/MAX also asserts that RE/MAX cannot be liable to the Steffans or Khoury on an agency theory because the Steffans and Khoury were presumed to be on statutory notice that Hall may be an independent contractor. (K.B.B. Brief, at 5-6.) Section 54.1-2101 of the Code of Virginia defines a real estate salesperson as "any person ... employed either directly or indirectly by, *or affiliated as an independent contractor with*, a real estate broker...." (Emphasis added.) Section 54.1-2106.1 states that "[n]o business entity shall be granted a firm license unless ... every employee or *independent contractor* who acts as salesperson for such business holds a license...." (Emphasis added.) RE/MAX claims that these sections are statutory notice and Plaintiffs are presumed to have knowledge of the statutes. (K.B.B. Brief, at 5-6.) RE/MAX then asserts that Plaintiffs had the responsibility to inquire as to Hall's relationship with RE/MAX. *Id*. at 6. However, RE/MAX has not offered any cases to support this position. Although the "law is assumed to be

known by every citizen from the time fixed for it to go into operation," *Wimbish v. Commonwealth*, 75 Va. 839, 844 (1880), this statute does not require Plaintiffs to inquire into the status of their real estate agent. The statutes above are insufficient notice to Plaintiffs that Hall might be an independent contractor. Therefore, the Court's position that Hall is an agent of RE/MAX as a matter of law is not altered by RE/MAX's argument that Plaintiffs should have personally determined Hall's status.

## II. *Is Hall a special agent of RE/MAX?*

Hall, as an agent of RE/MAX, entered into four identical listing agreements with Freemason Associates, Inc., the declarant of the 313 Freemason Condominium. (K.B.B. Brief, at 6.) RE/MAX has asserted that Hall and RE/MAX are, at most, special agents of Freemason Associates, Inc. *Id.* at 6. In *Lacey v. Cardwell*, the Virginia Supreme Court stated that real estate agents are special agents. 216 Va. 212, 217 (1975). A special agent is authorized to do one or more specific acts to obtain a desired result. *Id.* at 220. "Persons dealing with such agent do so at their own risk and cannot rely upon his assumption of authority, but must inform themselves of the extent of his powers." *Id.* (quoting *Bowles v. Rice*, 107 Va. 51, 52-53 (1907)).

RE/MAX argues that it is not liable to the buyers because, under *Lacey*, Plaintiffs were under an obligation to ascertain RE/MAX and Hall's authority to act for the owner. (K.B.B. Brief, at 6-8.) RE/MAX asserts that it had no authority to enter into contracts and no authority to make representations to potential buyers. *Id.* at 8. Because Hall has no more authority than RE/MAX, his principal, he did not have this authority. *Id.* Therefore, Hall's representations and contract execution were in the capacity of owner, not real estate agent. *Id.* Whether Hall made the representations in his capacity as real estate agent or owner is a question of fact. Therefore, K.B.B.'s motion for summary judgment on this ground is denied.

If Hall and RE/MAX are special agents, RE/MAX may still be liable for actions within Hall's apparent authority. "The powers ... of even a special agent, in the absence of evidence to the contrary, are usually co-extensive with the 'holding out' by his principal." *Singer Sewing Machine Co. v. Ferrell*, 144 Va. 395, 405 (1926).

III. *Did Hall have apparent authority to make the representations to potential buyers on behalf of RE/MAX?*

> The general rule is that as between the principal and agent and third persons, the mutual rights and liabilities are governed by the apparent scope of the agent's authority, which is that authority which the principal has held the agent out as possessing, or which he has permitted the agent to represent that he possesses, in which event the principal is estopped to deny that the agent possessed the authority which he exercised. In such cases the apparent authority, so far as third persons are concerned, is the real authority; and when the third person has ascertained the apparent authority with which the principal has clothed the agent, he has a right to rely thereon.

*Bardach Iron & Steel Co. v. Charleston Port Terminals,* 143 Va. 656, 673 (1925). The test for apparent authority is that of an ordinary prudent person. *Wright v. Shortridge,* 194 Va. 346, 365 (1952). Would an ordinary prudent person, "having a reasonable knowledge of the usages of the business in which the agent is engaged," be justified in believing that the agent has authority to perform the act? *Id.* The existence of apparent authority is a question of fact. *Id.; Bardach Iron & Steel Co.,* 143 Va. at 673.

RE/MAX provided an office and telephone for Hall to use and authorized Hall to use its name and trademarks on his business cards, the signs in front of the properties he listed, his advertisements, and any flyers he used. (ICA ¶ 3; ICAA ¶¶ 2(a), 6B.) He was permitted to introduce himself as a RE/MAX salesperson. *Id.* All paperwork indicated that RE/MAX was the real estate listing firm that Freemason Associates had agreed to list its condominiums with rather than Hall as an independent agent. (Listing Agreements.) These alleged facts are sufficient to form a prima facie case that RE/MAX cloaked Hall with authority to act at all times in the name of RE/MAX. Taking all facts in the light most favorable to the nonmoving party, Plaintiffs, there are sufficient alleged facts showing that an ordinarily prudent person may be justified in believing that the representations made by Hall were made by Hall on behalf of RE/MAX. Therefore, whether RE/MAX can be held liable for Hall's actions on the basis of apparent authority is a question of fact. At this time, Defendant RE/MAX's motion for summary judgment on the basis that Hall had no authority to make any representations on behalf of or in the name of RE/MAX is denied.

*IV. If Plaintiffs Khoury and Steffan prove that Hall knowingly misrepresented the state of the chimneys, can that knowledge be imputed to RE/MAX through its agent?*

In *Fulwiler v. Peters*, the Virginia Supreme Court held that:

Where the conduct of the agent is such as to raise a clear presumption that he would not communicate to the principal the facts in controversy, or where the agent, acting nominally as such, is in reality acting in his own business or for his own personal interest and adversely to the principal or has motive in concealing the facts from the principal, this rule [of imputed knowledge] does not apply.

179 Va. 769, 776 (1942) (quoting *Federal Reserve Bank v. Duffy*, 210 N.C. 598, 188 S.E. 82). In *Dudley v. Estate Life Ins. Co.*, the Virginia Supreme Court followed the Restatement (Second) of Agency § 261: "A principal who puts a servant or other agent in a position which enables the agent, while apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud." 220 Va. 343, 349 (1979). The court also relied on section 262 of the Restatement: "A person who otherwise would be liable to another for the misrepresentations of one apparently acting for him is not relieved from liability by the fact that the servant or other agent acts entirely for his own purposes, unless the other has notice of it." Restatement (Second) of Agency § 262 (1958).

RE/MAX argues that it is not liable for Hall's actions because he was acting for his own personal gain. (K.B.B. Brief, at 16.) However, RE/MAX must prove that Khoury and the Steffans had notice of Hall's personal interest. This is a question of fact that will be reserved for trial. Defendant RE/MAX's motion for summary judgment on the ground that RE/MAX is not liable for Hall's actions because he was serving his own personal interest is denied.

*V. RE/MAX asserts that it is not liable to the Steffans because under § 54.1-2132 of the Code of Virginia, a real estate agent is only under an obligation to disclose to the buyer material facts of which it has actual knowledge.*

Section 54.1-2132 of the Code of Virginia governs relationships between real estate agents engaged by buyers and the buyers. Subsection 2(c) provides that the agent must disclose to the buyer any material facts relating to the property or transaction of which the agent has actual knowledge. *Id.* The Court has found that Hall is an agent of RE/MAX. *See supra* Part I. Therefore,

Plaintiffs may recover if they prove that the actions of Hall should be imputed to RE/MAX. Therefore, this section, relating to the duties of Hall and RE/MAX toward the Steffans, is not a sufficient ground for a motion for summary judgment.

VI. *RE/MAX argues that it is not liable under Count IV, which alleges that RE/MAX engaged in untrue, deceptive, or misleading advertising, and states three grounds for its argument.*

A. *It was not responsible for the advertisements that are the subject of Count IV.*

Because Hall was an agent of RE/MAX, RE/MAX will be liable for Hall's actions if Plaintiffs prove that those actions should be imputed to RE/MAX. At least one of the advertisements in question had the RE/MAX name and logo. (Steffan Mot. for J. Ex. B; Khoury Mot. for J. Ex. B.) This allegation is sufficient to create a question of fact for the jury. Plaintiffs have alleged a prima facie case for holding RE/MAX liable for untrue, deceptive, or false advertising. Therefore, RE/MAX's motion for summary judgment on this ground is denied.

B. *RE/MAX is not liable under Count IV because the statements were opinions, not facts.*

RE/MAX has argued that the statements about the roof were expressions of opinion rather than statements of fact. (K.B.B. Brief, at 11-12.) Because the claims for damages to the roof have been dismissed from these individual lawsuits, RE/MAX's argument is moot.

C. *RE/MAX is not liable under Count IV because the buyers were not induced by the statements to buy their units.*

RE/MAX argues that the buyers were not induced by the statements to buy their units. (K.B.B. Brief, at 12.) As support for this argument, Defendant points to two circumstances: (1) each buyer commissioned his own professional inspection, and (2) each brochure contained a different statement about the condition of the fireplaces. (K.B.B. Brief, at 11-12.) The resulting knowledge that each buyer gained from his inspection and the reasonableness of each buyer's reliance on the brochures are disputed questions of fact. Therefore, Defendant RE/MAX's motion for summary judgment on this ground is denied.

*VII. RE/MAX asserts that is it not liable under Count VII of the Steffans' lawsuit because the General Assembly has abrogated the common law rules of agency as applied to real estate brokerage relationships.*

RE/MAX argues that § 54.1-2144 of the Code of Virginia abrogated the common law completely as applied to real estate brokerage relationships. RE/MAX has misapplied this section, however. The common law is abrogated only to the extent that it is inconsistent with the article referred to. Va. Code § 54.1-2144. Chapter 21 of Title 54 of the Virginia Code governs "Real Estate Brokers, Salespersons, and Rental Location Agents." The purpose of the chapter is to "protect the public from the fraud, misrepresentations, and imposition of dishonest and incompetent persons." *Massie v. Dudley*, 173 Va. 42, 55 (1939). This chapter is meant to protect the public, and its sections regulate the relationship between real estate brokers or salespersons and their clients, not between brokers and salespersons. *Id.* Article 3 of Chapter 21 deals with the duties of real estate brokers and salespersons toward their clients.

Because § 54.1-2144, abrogating the common law so far as it is inconsistent with the article it is in, applies only to this article, it has no effect on the liability of RE/MAX for the actions of Hall. The common law remains as the standard for determining RE/MAX's liability. Therefore, Defendant RE/Max's motion for summary judgment on this ground is denied.

*VIII. RE/MAX asserts that it is not liable to the Steffans under Count VIII of their Motion for Judgment, alleging violations of RE/MAX's fiduciary duty toward the Steffans, because § 54.1-2141 of the Code of Virginia governs the relationship and only requires disclosure if RE/MAX has actual knowledge of a defect.*

As discussed in Part VII above, Title 54, Chapter 21, Article 3, of the Code of Virginia governs real estate agents and brokers in their relationships with clients. It is possible that the actual knowledge of Hall may be imputed to RE/MAX because Hall is its agent; § 54.1-2141 does not change this. Therefore, the question whether the knowledge will be imputed must be determined by other law, as discussed above in Part IV.

*IX. Finally, RE/MAX claims that Khoury cannot collect any damages resulting from the condition of the chimneys because he did not rely on the representations made by Hall and RE/MAX.*

RE/MAX asserts that Khoury modified the contract of sale between Freemason Associates and himself. (K.B.B. Brief 18-19.) He added three

clauses, meant to ensure that there were working fireplaces when he moved into his unit: "Seller to have 3 fireplaces in working order;" "Fireplaces to have gas logs," and "Buyer to pay for gas logs." *Id.* at 18. RE/MAX asserts that Khoury's inclusion of these clauses indicates as a matter of law that he did not rely on the misrepresentations of Hall. *Id.* at 19. Defendant RE/MAX asserts that the only cause of action that Khoury has is for breach of contract, and RE/MAX is not responsible due to lack of privity. *Id.* Therefore, Khoury's suit against RE/MAX should be dismissed in its entirety.

Whether Khoury relied on the representations is a question of fact. While the additions to the contract are relevant, they are not dispositive. Therefore, Defendant RE/MAX's motion for summary judgment in the *Khoury* case is denied.

## X. *Conclusion.*

RE/MAX's motion for summary judgment is denied on all grounds.