**Sara K. HOWARTH, Plaintiff,**

v.

**ROCKINGHAM PUBLISHING COMPANY, INC. and K. Gary Anderson, Defendants.**

**No. CIV. A. 96–0096–H.**

United States District Court,
W.D. Virginia,
Harrisonburg Division.

Oct. 1, 1998.

Thomas Eugene Albro, Ronald Lee Livingston, Tremblay & Smith, Charlottesville, VA, for plaintiff.

Kristen Ann Bennett, Joseph Peter Dyer, Jr., Siciliano, Ellis, Dyer & Baccrossse, Fairfax, VA, for defendants.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

Before the court is the defendants' May 12, 1997 Motion for Summary Judgment, as renewed orally at an April 20, 1998 hearing, in this negligence and fraud action.[1] For the reasons stated more fully below, the court will grant summary judgment in favor of the defendant K. Gary Anderson on all counts and in favor of the defendant Rockingham Publishing Company, Inc. on the Complaint's negligence count against it. The court, however, will deny the summary judgment motion as to the fraud counts alleged against the publishing company because genuine issues of material fact require resolution by a jury.[2]

### I.

#### A. Procedural History and Issues

Plaintiff, Sara K. Howarth ("Howarth"), filed this action against defendants Rockingham Publishing Co., Inc. ("Rockingham") and K. Gary Anderson ("Anderson") on July 11, 1996. She alleges negligence by Rockingham

---

[1] On June 3, 1997, the Hon. B. Waugh Crigler, United States Magistrate Judge, was to hear oral argument on the motion. Instead, he entered an Order staying all action in this case pending a decision by the Supreme Court of the Commonwealth of Virginia in *A.H. v. Rockingham Publishing Co., Inc., et al.*, Record No. 961984 (writ granted April 11, 1997) because any decision could be substantively dispositive of the issues in this case. On January 9, 1998, the court issued a published opinion in *A.H. v. Rockingham Publishing Co., Inc., et al.*, 495 S.E.2d 482 (Va.1998). By Order of March 30, 1998, this court dismissed, without prejudice, the summary judgment motion during the pendency of the stay. On April 20, 1998, Judge Crigler lifted the stay and heard argument on the renewed summary judgment motion.

[2] Pursuant to 28 U.S.C. § 636(b)(1)(B), the court referred this matter to Judge Crigler for proposed findings of fact and a recommended disposition, subject to review by this court. On May 5, 1998, the Magistrate Judge filed his Report and Recommendation ("R & R"), which recommends that this court grant Anderson's summary judgment motion on all counts but deny Rockingham's summary judgment motion on all counts. Defendants filed objections to the R & R on May 15, 1998. Plaintiff filed the same on May 18, 1998. On May 28, 1998 plaintiff filed a reply to defendants' objections to the R & R. On August 28, 1998 the court heard oral argument from counsel for Howarth and Rockingham on their objections to the Magistrate's R & R. At the court's direction, these two parties filed supplemental memoranda in support of their objections to the R & R on September 8, 1998. Said objections having been timely and appropriately lodged, this court must undertake a *de novo* review of the case. *See Orpiano v. Johnson*, 687 F.2d 44, 48 (4th Cir.1982).

(COUNT I), actual and constructive fraud by Rockingham (COUNTS II and III), and negligence by Anderson (COUNT IV) related to a sexual assault on Howarth by an unknown third party.

Howarth alleges that defendants failed to meet their duty to warn plaintiff of the danger of such an assault about which it knew or should have known. Plaintiff further alleges that defendants' knowing misrepresentations of potential safety risks posed to its young newspaper carriers amount to actual fraud and were relied upon by plaintiff's parents when they allowed plaintiff to take the job delivering newspapers. Stated simply, Howarth charges that Rockingham knew of the risk that she might be sexually assaulted by a third party and misrepresented the nature or existence of this known risk. Additionally and alternatively, Howarth alleges that defendants' misrepresentations or non-representations of the history of certain prior safety problems of Rockingham's carriers amounts to constructive fraud because defendants should have known of the likelihood that such risks might repeat themselves.

Rockingham and Anderson filed the instant motion for summary judgment arguing that plaintiff's action is barred by the Virginia Workers' Compensation Act; that defendants owe no duty to the plaintiff to warn or protect her from the criminal acts of third persons, or, alternatively, that if a duty to warn or protect exists, it extends only to that area over which an employer actually has control. As well, the defendants maintain that, as a matter of law, criminal acts of a third party are not foreseeable, that certain prior assaults against Rockingham's paper carriers do not constitute notice, that the fraud counts fail as a matter of law, and that Mr. Anderson cannot individually be held liable.

Howarth replies that she was an independent contractor whose claim is not barred by the Virginia Workers' Compensation Act; that defendants owed a legal duty to warn her of latently dangerous work-related conditions; that such duty was voluntarily assumed by defendant, that the "special relationship" between Rockingham and Howarth imposed on defendant the duty to warn of reasonably foreseeable criminal acts of third persons; that a heightened duty of care attached because of plaintiff's status as a minor at the time she was assaulted; and that several prior sexual assaults on Harrisonburg children, some of whom also were newspaper carriers of Rockingham's, had put defendants on adequate notice of the foreseeability of such an assault. As to Anderson, plaintiff's reply asserts that he may be held individually liable. Howarth additionally asserts that because she was hired by Rockingham in violation of Virginia's child labor laws, Rockingham was negligent *per se,* which negligence proximately caused her injuries.

### B. Factual Background

Because this matter comes before the court on a motion for summary judgment, the court "draws all facts and inferences in favor of the non-moving party." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also, Charbonnages de France v. Smith,* 597 F.2d 406 (4th Cir.1979). Thus, the court will view the record in the light most favorable to Ms. Howarth.

In about April 1989, Howarth, then an eleven year-old girl, began delivering the *Daily News–Record* newspaper published by defendant Rockingham.[3] The newspaper is a daily publication originating in Harrisonburg which covers the news and events of that locality and the surrounding Shenandoah Valley of Virginia. At the time, defendant Anderson was employed by Rockingham as the Circulation Manager of the *Daily News–Record.*

On July 8, 1989, Howarth was sexually assaulted while delivering newspapers on her regular paper route in Harrisonburg. The man who attacked Howarth dragged her behind bushes, hit her in the face, and committed sodomy against her. Howarth described

---

**3.** As is discussed in greater detail below, Virginia's child labor laws permit children between ages twelve and sixteen to deliver "newspapers on regularly established routes between the hours of four o'clock ante meridian and seven o'clock post meridian, excluding the time public schools are actually in session." Va.Code § 40.1–109; *A.H.,* 495 S.E.2d at 484.

the assailant as a black male, approximately twenty-four years old and about 5′10″ in height. The plaintiff does not allege that her assailant had any connection to the defendant, Rockingham, or to its newspaper, the *Daily News–Record*. Rather, her attacker was an unknown third party who has never been prosecuted for Howarth's assault. In July 1993, however, police arrested a Daniel Lorenzo Jennings. Jennings confessed to others of the assaults mentioned below. Apparently, since the arrest there have been no similar sexual assaults in Harrisonburg of this type.

The plaintiff asserts that five assaults on children, two of whom were also Rockingham's paper carriers, occurred in Harrisonburg during the five years before her attack.[4] On October 15, 1984, a thirteen year-old male paper carrier was sexually assaulted by a person described as a twenty-year-old black male. On March 3, 1985, a twelve-year-old paper boy was assaulted by a person matching the same description who the victim additionally described as appearing about six feet tall. On May 16, 1985, a ten-year-old boy, was sexually assaulted by a black male about six feet tall. On September 19, 1988, a thirteen-year-old boy was sexually assaulted by a black male who appeared to be in his mid-twenties and about 6′0″ to 6′1″ feet tall. On October 23, 1988, another thirteen-year-old boy was assaulted by a black male in his twenties who stood about 5′8″ to 5′9″ feet tall. None of the latter three victims was a newspaper carrier.

Howarth stresses that commonalities exist among the above assaults, *to wit*, the ages of the victims, the types of assaults, modes of attack (*i.e.*, attacker emerged from behind bushes or from shadows), and the physical descriptions of the attacker or attackers. Defendants counter that the attacks were

dissimilar principally because the other attacks were against boys rather than girls.[5] As well, defendants stress that the most similar of the prior assaults, those against young paper carriers, each occurred more than four years before the Howarth assault.

## II.

### A. Summary Judgment Standard

Summary judgment should be granted if no genuine dispute of material fact exists and the moving parties (here, Rockingham and Anderson) are entitled to judgment as a matter of law. *See Anderson*, 477 U.S. at 250, 106 S.Ct. 2505. In considering the instant motion, the court must view the evidence and affidavits of the parties in light of the pleadings, drawing all facts and inferences in favor of Howarth. *See id.* at 248, 106 S.Ct. 2505; *Charbonnages de France, supra*, 597 F.2d at 414. A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact...." Fed.R.Civ.P. 56(c).

The non-moving party is entitled to have the credibility of all its evidence presumed. *See Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir.1990), *cert. denied*, 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). Before the non-moving party must face the burden of demonstrating the existence of a triable issue of fact, the movant must meet its burden of showing the absence of evidence to support the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Cray Communications, Inc. v. Novatel Computer Systems, Inc.*, 33 F.3d 390, 393–394 (4th Cir.1994).

---

**4.** Depositions and other discovery taken in *Doe v. Rockingham Publishing Co., Inc., et. al.*, Arlington County Circuit Court, Law No. CL93–892 (now *sub nom. C.P. v. Rockingham Publishing Co., Inc., et al.*) and *A.H. v. Rockingham Publishing Co., Inc., et al.*, Green County Circuit Court, Law No. 1420 were adopted and consolidated into the instant case by Order dated April 18, 1997.

**5.** The only prior sexual assault against a female mentioned by Howarth is a March 15, 1989 attack against a twenty-year-old woman. While the court will consider that attack, along with all others, on the issue of whether Rockingham had been put on notice of the possibility of an attack against Howarth, the March 1989 attack is distinct, and therefore somewhat less probative, because it was perpetrated against an adult, not a child.

■ There must be more than a scintilla of evidence to support the non-movant's case. *See Anderson, supra,* 477 U.S. at 248, 106 S.Ct. 2505. Rather, the evidence must be sufficient to "return a verdict" at trial for the party opposing the entry of judgment. *Id.*

### B. Virginia Workers' Compensation Act

Defendants contend that the Virginia Workers' Compensation Act, Virginia Code § 65.2–100 *et seq.* (Michie 1995 & Supp. 1996), provides the exclusive remedy for Howarth in the recovery of damages for her injuries. Defendants assert that Howarth was an "employee" subject to the Act, rather than an "independent contractor" outside the Act's coverage. Va.Code § 65.2–307. Defendants argue that the fundamental purpose of the Act is to grant employees compensation for their on-the-job injuries while shielding employers from tort liability. *See Counts v. Stone Container Corp.,* 239 Va. 152, 387 S.E.2d 481 (Va.1990).

■ While an "employee" under the Act certainly can be a minor, Va.Code § 65.2–101, such an employee acquires that status only if the employer exercises the requisite control over him under a traditional common law analysis of the master / servant relationship. *See Richmond Newspapers, Inc. v. Gill,* 224 Va. 92, 294 S.E.2d 840 (Va.1982). The classification of a person as an "employee" or an "independent contractor" is governed, not by any express provision of the Act, but by common law, and courts must look to it in determining who is an "employee." *See Hamilton Trucking/Hamilton Term. Corp. v. Springer,* 10 Va.App. 710, 396 S.E.2d 379 (Va.App.1990).

■ Employers cannot simply designate persons as "employees" or "independent contractors;" the actual contract of employment determines whether the service is being performed by an employee or an independent contractor. *See id.* Nonetheless, what the parties to such a contract call their relationship is but one factor to consider in determining the status of "employee" versus that of "independent contractor." *See Gill,* 294 S.E.2d at 843.

■ The right of control is the determinative factor in ascertaining the parties' status in an employment relationship. *See Intermodal Servs., Inc. v. Smith,* 234 Va. 596, 364 S.E.2d 221 (Va.1988).

> An employer-employee relationship exists if the party for whom the work is to be done has the power to direct the means and methods by which the other does the work. "If the latter is free to adopt such means and methods as he chooses to accomplish the result, he is not an employee but an independent contractor."

*Id.* at 224 (quoting *Virginia Employment Commission v. AIM Corp.,* 225 Va. 338, 302 S.E.2d 534, 539 (Va.1983) and *citing Craig v. Doyle,* 179 Va. 526, 19 S.E.2d 675, 677 (Va. 1942)).

The most persuasive authority on this case's employment status question is *Gill,* 224 Va. 92, 294 S.E.2d 840. There, the Virginia Supreme Court held that a "Route Carrier" delivering newspapers was an independent contractor rather than an employee. In classifying the carrier as an independent contractor, the court cited the employment contract which stated, in part, " '[t]he Route Carrier...is responsible for providing the equipment and / or supplies necessary for the satisfactory performance of this contract... [and] if the Route Carrier is unable to make such prompt delivery for any reason, he shall provide a substitute over whom the Route Carrier shall have full and complete control and responsibility.' " 294 S.E.2d at 842 (quoting employment contract). On the paramount issue of control, the *Gill* court stated that "an employer-employee relationship exists only if the control reserved includes the power to control, not only the result to be accomplished, but also the means and methods by which the result is to be accomplished." *Id.* at 843.

The defendants' contention that *Gill* is not "dispositive" on the question of whether a paper carrier is an independent contractor or an employee of a newspaper publishing company is correct in a sense. The *Gill* court recognized that an earlier case, *Hann v. Times–Dispatch Pub. Co.,* 166 Va. 102, 184 S.E. 183 (Va.1936) remains "good law." The older case was not overruled by *Gill,* but its

holding was uniquely fact-specific, as was that in *Gill* itself. In *Hann*, the court held that a newspaper delivery boy injured while riding in an automobile driven by his supervisor was an employee, and not an independent contractor, of the publisher for purposes of workers' compensation. *See id.* at 184. Nevertheless, the *Hann* court cautioned that " 'no hard and fast rule can be laid down.... It [the employment status issue] must be determined from the facts of the particular case in light of well settled principles.' " *Gill*, 294 S.E.2d at 845 (quoting *Hann*, 184 S.E. at 184). The carrier in *Hann* was held to be an employee because his supervisor interacted with him on a daily basis, sorted the newspapers delivered by him, picked him up in a car and drove him in a car to the starting point of his route, and "reserved and exercised the power of continuing control over the means and methods of performance...." *Gill*, 294 S.E.2d at 846. Because such control by the carrier's supervisor was lacking in *Gill*, however, the carrier there was held to be an independent contractor and not an employee.

■ Here, the degree of control by Rockingham and Anderson over Howarth more closely approximated that of the newspaper publisher and supervisor in *Gill* than that in *Hann*.[6] Apparently, Sara Howarth's employment contract with the newspaper has been lost. Absent the lost contract, the best evidence in the record of Howarth's employment status, the "Carrier Agreement" used by the *Daily News–Record,* indicates that defendant considered its newspaper carriers "independent contractor[s]." As well, defendant Anderson himself characterized these persons' employment status when he stated, "They're independent contractors. I can't really make anything mandatory for them." Dep. at 39.

The "Carrier Agreement" reserves for the newspaper deliverer the means of performing the duties of the job stating, "I, the Carrier, am an independent contractor with

full discretion as to the methods of accomplishing delivery to my customers, and am responsible for securing substitutes in the event of my inability to deliver...." This reservation of the carriers' freedom to choose the methods of performing their jobs strongly indicates that Howarth was an independent contractor rather than an employee subject to strict control by the defendant. As in *Gill*, the fact that the *Daily News–Record* retained the power to control the end result of the carriers' job (*i.e.,* that the papers would get delivered), does not diminish the reality that the defendant granted significant power to control the means and methods of the paper's delivery to the carriers themselves.

The "Carrier Agreement" here matches almost identically the language of the employment contract cited by the *Gill* court in holding that the plaintiff there occupied the employment status of an independent contractor. As an independent contractor, which the court concludes the plaintiff was, Howarth is not limited by the Virginia Workers' Compensation Act as the exclusive remedy for her injuries. This court so holds.

### C. Negligence Counts against Rockingham and Anderson

#### 1. Effect of the Virginia Supreme Court's holding in *A.H.*

■ The specific question of whether, in Virginia, a newspaper owes its minor delivery persons the duty to warn them of unknown, but dangerous, criminal activity, previously unsettled, has been answered in the negative by the State's highest tribunal. *See A.H. v. Rockingham Publishing Co., Inc., et. al.,* 495 S.E.2d 482 (Va.1998). A Federal court, sitting in diversity, must apply substantive State law. *See Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

*A.H.* involved the identical issue of whether the same newspaper publisher, Rocking-

---

6. The defendants' assertion that "[t]he present case is more similar to" *Hann* than to *Gill*, Defs.' Objections to the R & R at 10, is true only in that, like *Hann*, the instant case concerns a youthful paper carrier. The carrier in *Hann* was a "boy," whereas the age of the carrier in *Gill* is

unclear from the opinion's recitation of the facts. The paramount consideration in determining any plaintiff's employment status, however, is not his age, but rather the degree of supervision and control his employer exercised over him.

ham, and the same circulation manager, Anderson, had a duty to warn a "thirteen- or fourteen-year-old" newspaper carrier of the danger of a sexual assault by a third party. *Id.* at 484. There, the Virginia Supreme Court decided, first, whether there was any duty of care on the part of Rockingham[7] in that negligence action. *See id.* "Whether such duty exists is 'a pure question of law.'" *Id.* at 485 (citing *Burns v. Johnson,* 250 Va. 41, 458 S.E.2d 448, 451 (Va.1995), *ACME Markets, Inc., v. Remschel,* 181 Va. 171, 24 S.E.2d 430, 434 (Va.1943)). As to any such duty, the court continued:

> Before any duty can arise with regard to the conduct of third persons, there must be a special relationship between the defendant and either the plaintiff or the third person. *Burdette v. Marks,* 244 Va. 309, 312, 421 S.E.2d 419, 420 (1992). Examples of such a relationship between a defendant and a plaintiff include common carrier— passenger, business proprietor—invitee, and innkeeper—guest. *Klingbeil Management Group Co. v. Vito,* 233 Va. 445, 448, 357 S.E.2d 200, 201 (1987). And these examples are not exclusive. *Gulf Reston, Inc. v. Rogers,* 215 Va. 155, 157, 207 S.E.2d 841, 844 (1974). Another example of a special relationship is that of employer— employee with regard to the employer's potential duty of protecting or warning an employee.

*Id.* (citing *Restatement (Second) of Torts* § 302B cmt. e(B) (1965)).

The court concluded that, even though the newspaper carrier was an independent contractor, "the necessary special relationship existed between Rockingham and A.H. with regard to the conduct of third persons." *Id.* The court reasoned:

> Under the circumstances of this case, we conclude that Rockingham owed the same degree of care to A.H. that it would have owed if A.H. had been employed by Rockingham. *See Peele v. Bright,* 119 Va. 182, 184, 89 S.E. 238, 239 (1916) (instruction that degree of care owed to independent

contractor less than that owed toward employees erroneous and properly refused). *Id.* Nevertheless, the court next stated that:

> Even though the necessary special relationship is established with regard to a defendant's potential duty to protect or warn a plaintiff against the criminal conduct of a third party, that duty, as in other negligence cases, is not without limitations. A court must still determine whether the danger of a plaintiff's injury from such conduct was known to the defendant or was reasonably foreseeable. "[W]here the duty does exist [arising from the requisite special relationship], the obligation is not an absolute one to insure the plaintiff's safety[;] . . . [t]here is . . . no liability . . . where the defendant neither knows nor has reason to foresee the danger or otherwise to know that precautions are called for."

*Id.* (citing and quoting W. Page Keeton, *et al., Prosser and Keeton on the Law of Torts* § 56, at 385 (5th ed.1984)) (citing *Burdette, supra,* 421 S.E.2d at 421; *Gulf Reston, supra,* 207 S.E.2d at 845 (insufficient evidence to show criminal violence upon tenant reasonably foreseeable by landlord); *Trimyer v. Norfolk Tallow Co.,* 192 Va. 776, 66 S.E.2d 441, 446 (Va.1951); *Lynchburg Cotton Mills v. Stanley,* 102 Va. 590, 46 S.E. 908, 909 (Va.1904)).

Applying the principle that harm must be foreseeable even within a special relationship for the duty of care to attach, the court next found:

> Despite the special relationship, and even though the plaintiff's age may have imposed a greater degree of care upon Rockingham than it would have owed an adult in the plaintiff's circumstances, Rockingham had no duty to warn or protect [A.H.] against harm unless the danger of an assault on the plaintiff was known or reasonably foreseeable to Rockingham. Since Rockingham did not know that the plaintiff was in danger of being assaulted on that particular paper route, we consider wheth-

---

**7.** The Virginia Supreme Court treated Rockingham and Anderson as one collective entity, which it called "Rockingham," for purposes of evaluating the duty of care newspaper publishers and their managers do and do not owe to their minor paper carriers. *A.H.,* 495 S.E.2d at 484–85.

er the evidence is sufficient to raise a jury question whether an assault on him was reasonably foreseeable.

*Id.* at 486. In ordinary circumstances, the court then instructed, acts of third party criminal assaults cannot reasonably be foreseen. *See id.* (citing *Burdette, supra,* 421 S.E.2d at 420; *Marshall v. Winston,* 239 Va. 315, 389 S.E.2d 902, 904 (Va.1990); *Wright v. Webb,* 234 Va. 527, 362 S.E.2d 919, 921 (Va. 1987); *Gulf Reston, supra,* 207 S.E.2d at 844–45; *Connell's Ex'rs v. Chesapeake & Ohio Ry. Co.,* 93 Va. 44, 24 S.E. 467, 469 (Va.1896). Specifically limiting the inquiry to the prior assaults against Rockingham's paper carriers,[8] the court determined:

> In our opinion, the three[ [9]] prior sexual assaults on Rockingham carriers in various locations in the City of Harrisonburg in the five years preceding the assault on the plaintiff were *insufficient to raise a jury issue* [ [10]] of whether a sexual attack on the plaintiff was reasonably foreseeable. This is not a case in which it was shown that the three prior assaults were at or near a location of the plaintiff's assault, or that they occurred frequently or sufficiently close in time to make it reasonably foreseeable that the plaintiff would be similarly assaulted. Hence, we hold that the trial court correctly concluded that Rockingham had no duty to warn the plaintiff or his parents, of the danger of an attack upon the plaintiff.

*Id.* (emphasis added).

Applying the law to the facts of the case at bar leads, ineluctably, to but one conclusion. If three prior sexual assaults against paper carriers did not put Rockingham or Anderson on notice in November 1989 of the foreseeability of the attack in *A.H.* such that

the duty to warn arose, then the two prior such attacks by July 1989 could not have done the same in this case. This court therefore holds that, as a matter of law,[11] even if Rockingham or Anderson knew of the two prior attacks, Howarth's attack was not reasonably foreseeable. This case presents a fact pattern consistent with the long line of Virginia cases holding that in ordinary circumstances, assaultative acts by third parties reasonably cannot be foreseen. *See Burdette,* 421 S.E.2d at 420; *Marshall v. Winston,* 239 Va. 315, 389 S.E.2d 902, 904 (Va. 1990); *Wright v. Webb,* 234 Va. 527, 362 S.E.2d 919, 921 (Va.1987); *Gulf Reston,* 207 S.E.2d at 844–45; *Connell's Ex'rs v. Chesapeake & Ohio Ry. Co.,* 93 Va. 44, 24 S.E. 467, 469 (Va.1896). Because the assault against Howarth was not reasonably foreseeable, this court further holds that neither Rockingham nor Anderson had any duty to warn or protect the plaintiff from the danger of personal harm or injury. *See A.H.,* 495 S.E.2d at 486.

### 2. Distinguishing *A.H.*

■ In his Report and Recommendation, the Magistrate Judge recommends that this court deny defendants' summary judgment motion. The Magistrate Judge distinguishes the instant case from *A.H.* and finds that Howarth, though almost twelve at the time she was assaulted while delivering newspapers, had been eleven when hired for the position in apparent violation of the Virginia child labor laws, Va.Code §§ 40.1–78 and 40.1–109 (Michie 1994 & Supp.1996). Based on this apparent violation, the Magistrate Judge recommends that this court hold Rockingham strictly liable for Howarth's injuries arising from the sexual assault. For the following reasons, the court will decline to adopt the Magistrate Judge's reasoning on

8. The Supreme Court in *A.H.* held that the trial court did not abuse its discretion in excluding evidence of the prior assaults against non-carriers. *Id.* at 487–88. The trial court had found that those assaults were not "substantially similar" to the assault against A.H. *Id.*

9. The three prior assaults included the two that had occurred prior to Howarth's attack plus Howarth's July 1989 assault itself. A.H. was sexually assaulted on November 7, 1989.

10. The trial court in A.H. had sustained Rockingham's motion to strike the evidence following the

presentation of all parties' evidence. *Id.* at 482, 484.

11. The A.H. court answered this legal question in the context of the propriety of a motion to strike plaintiff's evidence before sending the case to the jury. The analysis applies here to defendants' summary judgment motion which similarly argues that if, as a matter of law, no duty to warn exists, the trier of fact has no genuine issue of material fact to resolve. *See* Fed.R.Civ.P. 56(c).

this point and instead hold that *A.H.* squarely applies to the instant case's negligence counts.

Attempts by the Magistrate Judge and by plaintiffs to distinguish this holding based on the difference in the ages of the two plaintiffs are unavailing under scrutiny. The court in *A.H.* specifically considered whether there was any need for special consideration or a heightened duty due to the age of the plaintiff. The court found that even if there were such a heightened duty, the issue of foreseeability would still be determinative: if the danger of a criminal assault by an unrelated third party was not reasonably foreseeable, there could be no duty to warn. On the foreseeability issue, *A.H.* and this case are perfectly analogous. If anything, the attack on *A.H.* was more foreseeable than the attack on Howarth because A.H. was attacked shortly after Howarth.

The cases cited by plaintiff to support the argument that *A.H.* is not binding are themselves distinguishable. The old cases on violations of the child labor law in Virginia typically involved children working in factories or other inherently dangerous employment, where it was reasonable as a matter of policy to find that the unlawful hiring of the child had a causal connection or was the proximate cause of the injury to the child. *See, e.g., Miller Mfg. Co., Inc. v. Aetna Life Ins. Co.*, 150 Va. 495, 143 S.E. 747 (Va.1928) (insurance company exonerated from liability to reimburse company for its payment to child for injury incurred while employed by company because child was employed at company's factory when below the age of sixteen, in violation of child labor law); *Standard Red Cedar Chest Co., Inc., v. Monroe*, 125 Va. 442, 99 S.E. 589 (Va.1919) (child plaintiff may recover for injuries incurred when his hand was caught in machine, employer put child to work at a dangerous machine, and employer neglected to warn of machine's dangers). Howarth was not employed in such an occupation that placed her in peril by its very nature. She was only months away from turning twelve, the lawful age for paper carriers in Virginia. And her injury was not caused by aspects of her job that could rea-

sonably be foreseen by her employer, as in *Miller* and *Monroe*.

■ The parties unnecessarily devote a great amount of discussion to whether violation of a statute, namely Virginia's child labor law, which itself provides a remedy for such violation, gives rise to a private cause of action in Virginia. Virginia law provides a relatively clear answer to this question. Section 8.01–221 of the Virginia Code, referred to by plaintiffs, preserves preexisting rights of action even though a statute may provide additional penalties for such actions. Case law regarding this section emphasizes that it confers no new right of action. *See, e.g., Ward v. Connor*, 495 F.Supp. 434 (E.D.Va. 1980) *rev'd on other grounds*, 657 F.2d 45 (4th Cir.1981), *cert. denied*, 455 U.S. 907, 102 S.Ct. 1253, 71 L.Ed.2d 445 (1982). A statute providing remedies for a violation does not displace existing remedies for that act unless it explicitly so states.

■ In the case of the child labor law, then, which provides a civil penalty for violation, there exists no private cause of action for mere hiring of an underage child, but ordinary causes of action for negligence may still lie in cases involving a child unlawfully hired. Section 40.1–78 of the Virginia Code reads, in pertinent part, "No child under fourteen years of age shall be employed, permitted or suffered to work in, about or in connection with any gainful occupation except as specified in this chapter." Section 40.1–109 provides one such exception allowing children between ages twelve and sixteen to work delivering daily newspapers between four o'clock a.m. and seven o'clock p.m., excluding school hours. Enforcement of Virginia's child labor laws rests with the Commissioner of Labor and Industry, and State and local law enforcement officials. *See* Va.Code § 40.1–2 and § 40.1–114. Certain civil penalties attach to violations of the child labor laws as well:

> Whoever employs, procures, or, having under his control, permits a child to be employed, or issues an employment certificate in violation of any of the provisions of this chapter ... shall be subject to a civil penalty not to exceed $1,000 for each violation.... Civil penalties owed under this

section shall be paid to the Commissioner for deposit into the general fund of the treasury of the Commonwealth.

*Id.* at § 40.1–113(A) and (B).

 The case law interpreting the civil penalties provision long has been clear that it applies to four classes of persons, namely, the proprietor of the business (or his agent) who employs the child, the person who procures the employment of the child, the parent (or other person in control) who permits the child to be employed, and the official who issues the false employment certificate. *See Clover Creamery Co. v. Kanode,* 142 Va. 542, 129 S.E. 222 (Va.1925). Nevertheless, the law does not impose upon a business proprietor (or his agent) the duty to prevent, or use reasonable care to prevent, an underage child from engaging in newspaper carrier employment. *See* 12B Michie's Juris., Master and Servant § 95 (1992) (citing *Kanode,* 142 Va. 542, 129 S.E. 222). Instead, Virginia's statute provides for a civil penalty "not to exceed $1,000 for each violation" of the prohibition against the employment of underage children as paper carriers. Va.Code § 40.1–113.[12]

 As the defendants' correctly note, section 40.1–109 does not grant to a child employed under the age of twelve a private right of action to enforce the provisions of Virginia's child labor laws. Defs.' Objections at 4–7. Indeed, where a statute expressly provides for a civil remedy (or criminal sanctions), as here, no private right of action arises. *See Vansant & Gusler, Inc. v. Washington,* 245 Va. 356, 429 S.E.2d 31 (Va.1993) (criminal statute prohibiting larceny does not give rise to a private right of action); *see also School Bd. of Norfolk v. Giannoutsos,* 238 Va. 144, 380 S.E.2d 647 (Va.1989). Courts have been reversed for judicially implying a private cause of action for violation of statutes. *See, e.g., Morgan v. American Family Life Assurance Co. of Columbus,* 559 F.Supp. 477 (W.D.Va.1983) (implying a private cause of action for violation of Virginia's

Unfair Trade Practices Act), *rev'd by A & E Supply Co., Inc. v. Nationwide Mutual Fire Ins. Co.,* 798 F.2d 669(4th Cir.1986) (holding that the Act does not establish a private cause of action because it delegates to the State Corporation Commission authority to impose sanctions), *cert. denied,* 479 U.S. 1091, 107 S.Ct. 1302, 94 L.Ed.2d 158 (1987).

Plaintiff's Memorandum in Opposition to Defendant's Objections clarifies that her cause of action here is not for violation of the child labor laws, but for negligence. While violation of a statute can constitute negligence *per se* when it proximately causes harm, *see Smith v. New Dixie Lines, Inc., et al.,* 201 Va. 466, 111 S.E.2d 434, 437 (Va. 1959), *Beasley v. Bosschermuller,* 206 Va. 360, 143 S.E.2d 881, 886 (Va.1965), these cases merely redirect the court to the questions of proximate cause and foreseeability. *See, e.g., Baecher v. McFarland,* 183 Va. 1, 31 S.E.2d 279, 280 (Va.1944) (even where there is violation of statute or ordinance, violator not guilty of negligence unless violation is proximate cause; where causal connection between violation and injury is "patently lacking" there is no question for jury).

The theory emphasized by plaintiff that a higher duty is owed when a younger child is involved pertains only to the first of several steps in the necessary negligence analysis. Under this first step, the court follows that portion of the holding in *A.H.* that concluded that the necessary special relationship existed between Rockingham and its paper carriers. The fact that the relationship may have been even more special due to Howarth's younger age does not relieve the court from continuing to the next step in its analysis: the issue of foreseeability. Even in the cases cited by plaintiff, where Virginia courts have found a relatively higher duty of care, "proportionate to the apparent ability of the child, in view of his age, maturity and intelligence," the calculus also includes whether "those perils are such as have become apparent to, or should have been discovered ... in the exercise of ordinary care under the cir-

---

**12.** The court notes that plaintiff's argument that violation of the child labor law constitutes negligence *per se* poses a potential danger of backfiring on plaintiff. If the court were to accept plaintiff's argument, not only defendants, but plaintiff's parents would also be negligent *per se* because both are among the four classes subject to civil liability for violation of the child labor law.

cumstances." *Conrad v. Taylor,* 197 Va. 188, 89 S.E.2d 40, 42 (Va.1955). Plaintiff's assertion that any particular age constitutes a magical cut-off is also mistaken. The case law cited by plaintiff distinguishes not between the duty owed a fourteen-year-old and a thirteen-year-old, but between a child over fourteen and a child of "such tender years that the defendant should have taken into consideration the fact that he might act thoughtlessly, and, upon childish impulse, put himself in a position of peril." *Claypoole v. King,* 212 Va. 132, 183 S.E.2d 167, 168 (Va. 1971). This language is clearly inapplicable to the case at hand which did not involve a child whose thoughtless impulses put her in peril, but who, unfortunately, would have been injured in the same way had she been twelve or thirteen rather than eleven at the time.

For the above-stated reasons, the court will grant summary judgment on the negligence counts against Rockingham as well as Anderson.

### D. Fraud Counts

#### 1. The Law of Fraud in Virginia

 Actual fraud is intentional fraud. *See Moore v. Gregory,* 146 Va. 504, 131 S.E. 692 (Va.1925). The elements of actual fraud must be shown by clear and convincing evidence and are: (1) a false representation, (2) of a material fact, (3) intentionally and knowingly made, (4) with intent to mislead, (5) with reliance by the party misled, (6) and with resulting damage or injury to the misled party. *See Winn v. Aleda Constr. Co.,* 227 Va. 304, 315 S.E.2d 193 (Va.1984); *Nationwide Mut. Ins. Co. v. Hargraves,* 242 Va. 88, 405 S.E.2d 848 (Va.1991); *Elliott v. Shore Stop, Inc.,* 238 Va. 237, 384 S.E.2d 752 (Va. 1989).

 Constructive fraud consists of the breach of a legal or equitable duty which, irrespective of moral guilt, is declared by the law to be fraudulent because it tends to deceive others or violate their confidence. *See Nuckols v. Nuckols,* 228 Va. 25, 320 S.E.2d 734 (Va.1984). The elements of constructive fraud also must be proven by clear and convincing evidence and are that a false representation of a material fact was made

innocently or negligently, and the injured party was damaged as a result of his reliance on the misrepresentation. *See Mortarino v. Consultant Engineering Services, Inc.,* 251 Va. 289, 467 S.E.2d 778, 782 (Va.1996). A finding of constructive fraud exists when one has represented as true that which is really false in such a way as to induce a reasonable person to believe it and with the intent that such a person will act on the misrepresentation. *See id.*

 To constitute either type of fraud, an affirmative representation need not have been made, however; fraud may consist of the suppression or omission of that which is true as well as the articulation of that which is false. *See* 8B Michie's Juris., Fraud and Deceit § 15 (1994) (citing, *inter alia, City of Norfolk v. Bennett,* 205 Va. 877, 140 S.E.2d 655 (Va.1965)).

#### 2. The Law Applied

 Here, the record is replete with conflicting evidence about what Rockingham and one of its unnamed agents may have represented to or concealed from the plaintiff's mother, in particular, about the safety history of the newspaper's carriers. *See* Complaint at ¶¶ 21–27. Certainly, deposition testimony from the plaintiff's mother alone creates a triable issue of fact on this point. Mrs. Howarth testified in deposition that she inquired about that prior safety record. *See* Elizabeth Howarth Dep. at 87–89. She states that Rockingham through its agents told her that she had no reason to be concerned about her daughter's safety. *See id.* at 89. If Mrs. Howarth had been told about the two prior assaults against the paper's carriers, she claims that she would not have allowed her child to take the job delivering newspapers. *See id.*

 The plaintiff presents claims of actual or constructive fraud against Rockingham sufficient to survive the instant motion for summary judgment. Howarth's Complaint only alleges that an unnamed "agent" of Rockingham misled plaintiff's mother about the carriers' safety record, as described above. Complaint at ¶¶ 21–27. Anderson is not specified as the Rockingham agent or

employee who allegedly misled Mrs. Howarth; indeed, plaintiff alleges no actual or constructive fraud count against him. Under traditional principles of *respondeat superior*, however, the tortious acts of even an unnamed agent may impose vicarious liability on his employer if the agent, at the time, was acting within the scope of his employment. *See, e.g., Jamison v. Wiley*, 14 F.3d 222, 237 (4th Cir.1994) (interpreting Virginia's legal standard for *respondeat superior* liability); *Plummer v. Center Psychiatrists, Ltd.*, 252 Va. 233, 476 S.E.2d 172 (Va.1996) (indicating that summary judgment as to respondeat superior liability is rarely appropriate). The evidence in the record suggests that the agent was acting well within the scope of his employment when he allegedly misled Howarth's mother about the safety record of Rockingham's newspaper carriers. Accordingly, the instant summary judgment motion must be denied as to the fraud counts against the defendant newspaper publisher.

## III.

For the foregoing reasons, the court will adopt, in part, the Magistrate Judge's Report and Recommendation and will grant, in part, and deny, in part, the defendants' motion for summary judgment.

An appropriate Order this day shall issue.

### ORDER

Upon consideration of the defendants' May 12, 1997 Motion for Summary Judgment, as renewed orally at an April 20, 1998 hearing, and for the reasons stated more fully in the accompanying Memorandum Opinion, it is this day

### ADJUDGED AND ORDERED

as follows:

(1) the United States Magistrate Judge's May 5, 1998 Report and Recommendation shall be, and it hereby is, ADOPTED IN PART; the court shall, and hereby does, DECLINE TO ADOPT IN PART the same Report and Recommendation;

(2) the Motion for Summary Judgment shall be, and it hereby is, GRANTED as to the count (COUNT IV) against the defendant K. Gary Anderson; he shall be, and hereby is, DISMISSED WITH PREJUDICE from this action;

(3) the Motion for Summary Judgment shall be, and it hereby is, GRANTED as to the negligence count (COUNT I) against the defendant Rockingham Publishing Company, Inc.;

(4) the Motion for Summary Judgment shall be, and it hereby is, DENIED as to the fraud counts (COUNTS II and III) against the defendant Rockingham Publishing Company, Inc.

The Clerk of the Court hereby is directed to send a certified copy of this Order and the accompanying Memorandum Opinion to all counsel of record and to the Hon. B. Waugh Crigler, United States Magistrate Judge.