UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

WORLDCOM, INCORPORATED,

　　　　　　　*Plaintiff-Appellee,*

v.

KEVIN BOYNE,

　　　　　　　*Defendant-Appellant.*

⎱

No. 02-1479

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(CA-01-193-A)

Argued: May 6, 2003

Decided: June 25, 2003

Before WILKINSON, NIEMEYER, and TRAXLER,
Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Stephen Michael Sayers, HUNTON & WILLIAMS,
McLean, Virginia, for Appellant. Emmett Francis McGee, Jr., PIPER,
MARBURY, RUDNICK & WOLFE, L.L.P., Baltimore, Maryland,
for Appellee. **ON BRIEF:** Robert J. Mathias, PIPER, MARBURY,
RUDNICK & WOLFE, L.L.P., Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Plaintiff WorldCom, Inc. brought this unjust enrichment action against Kevin Boyne after Boyne breached a commitment to remain employed with the company for two years, and then refused to repay the bonus he had received in exchange for that commitment. In his defense, Boyne alleged that his retention of the benefit was justified by WorldCom's own misconduct. Boyne also brought counterclaims against WorldCom alleging that WorldCom's actions caused him to forego thousands of dollars in profits from the sale of company stock. The district court rejected Boyne's defense and counterclaims, and we affirm its judgment.

I.

Plaintiff WorldCom, Inc. ("WorldCom") is a telecommunications company that provides local, long-distance, and Internet services. WorldCom owns over 500 subsidiary companies, including UUNET Technologies, Inc. ("UUNET"). On March 20, 1995, UUNET hired defendant Kevin Boyne as UUNET's Manager of Engineering, and promoted him to Chief Operations Officer of Internet Technology on June 15, 2000. As Chief Operations Officer, Boyne received an annual salary of $230,000.00.

During the spring of 2000, the technology sector was still thriving. As a result, Internet-oriented companies such as WorldCom faced fierce competition in hiring and retaining top industry executives. In order to retain its own top executives, WorldCom decided to implement a formal "Retention Program." Under the Program, certain executives would receive a cash bonus and stock options in return for the executive's commitment to remain with the company through July 2002.

On May 15, 2000, Bernard Ebbers, Chief Executive Officer and President of WorldCom, met with Boyne and approximately 100 other executives of WorldCom subsidiaries to discuss the Retention Program. Ebbers testified that he told these executives that they would be "receiving an envelope containing a retention bonus and stock options, and that the bonuses were conditioned upon the recipients remaining with the company through July 2002." *WorldCom, Inc. v. Boyne*, No. 01-193-A (E.D. Va. Mar. 5, 2002). Ebbers further testified that he emphasized the fact that any executive who resigned prior to July 2002 would have to return the cash bonus.

Against the advice of WorldCom's legal counsel, Ebbers did not require the executives to sign a legal document memorializing this understanding. However each individual retention package envelope contained a memorandum that made this commitment clear. The memorandum read, in part: "Cash award in the amount of __ . . . . In return, I ask for your personal commitment to WorldCom through July 2002. In accepting this package, you commit to the company your continued employment through this date." Several of the executives testified at trial that when they left the meeting, they had a clear understanding of their repayment obligation.

At the conclusion of the meeting, Ebbers handed each executive an envelope containing his or her individual retention package. Boyne's envelope contained a check for $900,000, as well as the memorandum stating that Boyne was being offered $900,000 and certain WorldCom stock options in exchange for his commitment to remain with the company through July 2002. Boyne cashed the check a few days later. Shortly thereafter, several executives who had also cashed their checks resigned, and Boyne helped the company secure return of their retention bonuses.

In June 2000, shortly after Boyne accepted the retention package, WorldCom realigned some of UUNET's operations and promoted Boyne to Chief Operations Officer. Rumors were circulating around UUNET at the time that WorldCom also planned to fully integrate UUNET into WorldCom. However Ronald Beaumont, WorldCom's President and CEO of Operations Technology, assured several senior UUNET management team members that WorldCom did not plan to

integrate UUNET. In addition, Ebbers sent a company wide e-mail expressing the same sentiment.

By the end of the summer, WorldCom's intentions began to change. Beaumont testified that it became evident that UUNET's organizational structure was causing inefficiencies that did not make sound business sense. WorldCom thus decided that it would be in WorldCom's best interests to integrate UUNET. On October 27, 2000, Beaumont informed Boyne of this decision. Believing that the integration would not be good for his career, Boyne submitted his resignation on November 20, 2000, effective December 15, 2000, less than seven months into his two-year commitment.

Because Boyne did not fulfill his commitment to the company, WorldCom demanded that he return the $900,000 bonus, but he refused. On December 13, to offset the $900,000 WorldCom believed Boyne owed it, WorldCom suspended Boyne's right to exercise 75,000 vested stock options. Several days later, WorldCom also rescinded Boyne's final paycheck.

On February 5, 2001, WorldCom filed a complaint against Boyne in Virginia federal district court. The complaint alleged causes of action for breach of contract, unjust enrichment, and conversion, all based on Boyne's failure to repay the cash award. On March 22, the court dismissed the conversion claim against Boyne. Boyne then filed a five-count counterclaim against WorldCom alleging actual fraud, constructive fraud, conversion, tortious interference in contractual relations, and breach of contract. These claims were based on allegations that WorldCom deceived Boyne into accepting his retention package and then illegally withheld his benefits and compensation when he resigned.

The parties filed cross-motions for summary judgment. The court granted summary judgment in favor of Boyne on WorldCom's breach of contract claim, and in favor of WorldCom on Boyne's counterclaims for fraud, conversion, and tortious interference with contractual relations.

After a five-day bench trial on WorldCom's unjust enrichment claim and Boyne's breach of contract claim, the district court issued

an opinion rendering both findings of fact and conclusions of law. First, the court held that Boyne had been unjustly enriched by failing to return the cash bonus. The court rejected Boyne's argument that WorldCom's unclean hands barred it from equitable relief because Boyne failed to prove that WorldCom's allegedly inequitable conduct bore an "immediate and necessary relation" to its unjust enrichment claim. The court thus ordered Boyne to repay the full amount of the retention bonus. As to Boyne's breach of contract counterclaim, the court ordered WorldCom to pay Boyne his final paycheck and to compensate Boyne for his unused vacation time. However, the court held that Boyne could not recover the value of his "frozen" stock options because he failed to sufficiently prove damages. Boyne now appeals.

## II.

Boyne argues initially that WorldCom's claim for unjust enrichment is barred by the doctrine of unclean hands.[1] The doctrine of unclean hands prevents a plaintiff from obtaining equitable relief if the plaintiff has been "guilty of any inequitable or wrongful conduct with respect to the transaction or subject matter sued on." *Richards v. Musselman*, 267 S.E.2d 164, 166 n.1 (Va. 1980) (quoting W. deFuniak, Handbook of Modern Equity § 24 (2d ed. 1956)). A showing that the plaintiff engaged in inequitable conduct does not automatically bar equitable relief. Rather, a defendant raising an unclean hands defense must demonstrate "a close nexus between a party's unethical conduct and the transactions on which that party seeks relief." *In re Uwimana*, 274 F.3d 806, 810 (4th Cir. 2001).

Boyne argues that three separate acts by WorldCom support his unclean hands defense: 1) WorldCom's representations that it did not intend to integrate UUNET; 2) the freezing of Boyne's 75,000 vested stock options; and 3) the withdrawal of Boyne's final paycheck. In order for this defense to succeed, Boyne must link at least one of the predicate acts to the event WorldCom complains about: Boyne's

---

[1]Boyne also argues that WorldCom did not have standing to sue for unjust enrichment because the account on which the retention bonus check was drawn was held in the name of a WorldCom subsidiary. We find this argument without merit.

refusal to repay the $900,000 retention bonus after he voluntarily left the company prior to July 2002. We agree with the district court that Boyne has failed to establish such a connection.

Boyne argues that WorldCom knew that it was going to integrate UUNET long before the integration was announced, and therefore that its representations to the contrary were false. Boyne further contends that he would not have accepted the retention bonus if not for WorldCom's false representations. The district court, however, found that "WorldCom made no explicit promises to . . . Boyne, prior to [his] negotiation of the cash award[ ], that WorldCom would not integrate UUNET into WorldCom." *WorldCom*, No. 01-193-A, at 21. "In deference to the unchallenged superiority of the district court's fact-finding ability," we cannot set aside a district court's factual findings unless they are clearly erroneous. *Salve Regina College v. Russell*, 499 U.S. 225, 233 (1991); Fed. R. Civ. P. 52(a). The district court did not clearly err in finding that Boyne's acceptance of the retention bonus was not secured by any WorldCom statements about integration.

Moreover, any integration-related statements that WorldCom made after Boyne accepted the bonus are irrelevant, because they do not bear an "immediate and necessary" relation to Boyne's acceptance of and subsequent refusal to repay the bonus. Boyne argues that the post-acceptance misstatements are important because WorldCom's decision to integrate caused him to resign, which in turn gave rise to WorldCom's unjust enrichment claim. However Boyne concedes that it was entirely within WorldCom's right to integrate UUNET into WorldCom. And more importantly, WorldCom's decision to integrate was in no way related to the Retention Program. Nothing in Boyne's retention package suggested that the commitment hinged on non-integration. Thus the fact that Boyne resigned in response to the integration is irrelevant to WorldCom's unjust enrichment claim, and WorldCom's post-acceptance statements about integration cannot support an unclean hands defense.

As to the remaining two predicate acts, the frozen stock options and the salary reversal, the district court found that WorldCom took these actions in good faith. Specifically, the district court found that WorldCom's actions amounted to an attempt to set off the amount it

believed Boyne owed to it, and "[i]t is not an unconscionable act for an entity to withhold money when it has a good faith belief that one owes it money." *WorldCom*, No. 01-193-A, at 20 n.7. This finding of good faith is also entitled to deference and therefore these acts also cannot support an unclean hands defense.

The balance of equities in this case must relate to the $900,000. Boyne received a cash bonus amounting to more than three times his yearly salary in exchange for a commitment to remain with the company for two years. Boyne went back on that commitment, but argues that he should still retain its benefits because WorldCom made a valid business decision with which Boyne did not agree. The balance of equities here obviously weighs in WorldCom's favor. We therefore affirm the district court's judgment ordering Boyne to repay the award in full.[2]

### III.

Boyne next asserts three counterclaims: 1) breach of contract; 2) fraud; and 3) conversion. We address each counterclaim in turn.

### A.

First, Boyne argues that the district court erred in rejecting his breach of contract counterclaim for failure to prove damages. Boyne argues that he need not prove the full extent of damages because his failure to prove damages is a direct result of WorldCom's wrongdoing. Boyne contends that this court can calculate sufficiently precise damages based on the price of the frozen shares on December 13, 2000, because he would have exercised his options and sold the shares on that day had they not been frozen.

---

[2]We reject Boyne's argument that he should only be required to pay the net amount of the retention bonus. WorldCom paid out $900,000.00 in exchange for Boyne's commitment to remain with the company. Boyne breached that commitment. Equity thus requires that Boyne repay the full amount in order to put the parties in the same position they would have been if the exchange had not occurred.

A plaintiff is not required to prove damages with "mathematical precision," but he must at least prove the "elements of [his] damage with reasonable certainty." *Gwaltney v. Reed*, 84 S.E.2d 501, 502 (Va. 1954). In other words, a plaintiff must "furnish evidence of sufficient facts or circumstances to permit at least an intelligent and probable estimate thereof." *Id.* The district court properly held that Boyne has failed to make such a showing here.

Boyne's vested stock options gave him the option to purchase stock at a set price ("strike price"). In order to profit from the purchase of those options, Boyne would not only have to exercise the options, but also to then sell them at a higher price. Therefore in order to prove damages, Boyne must demonstrate that he would have exercised the frozen options and that he would have sold them at a price higher than the strike price. Boyne's evidence is insufficient to make this showing.

Boyne's key evidence of damages is a stipulation between the parties. The stipulation indicates the strike price of the options as well as the opening and closing price of the stock on December 13. The parties stipulated that had Boyne both exercised and sold the options on December 13, he would have made $64,057 profit. The stipulation is irrelevant to Boyne's showing of damages, however, unless Boyne can adduce some evidence demonstrating that he would have both exercised the options and sold the stock on December 13.

Boyne testified at trial that he instructed his broker to call him when it made sense to exercise the options. Boyne's broker called on December 13, the day the options were frozen. However, the evidence is ambiguous at best as to whether Boyne's broker called to notify him that the options had been frozen or to tell him to exercise his options. After hearing the testimony and weighing the evidence, the district court concluded that the broker had called simply to alert Boyne to the frozen options, and we must defer to that finding.

Absent any evidence that Boyne had any intention of exercising the options or that he would have sold the stock at a profit, we hold that Boyne has failed to prove sufficiently precise damages to support his breach of contract claim.

## B.

Next, Boyne argues that the district court improperly granted summary judgment in favor of WorldCom on Boyne's fraud and constructive fraud claims. The district court held that Boyne failed to prove that he suffered damages caused by WorldCom's misrepresentations. Boyne contends that if not for WorldCom's misrepresentations regarding integration, he would have quit his job immediately, exercised his vested stock options, and sold all of his WorldCom stock for a significant profit. The causal connection between WorldCom's actions and Boyne's claim for damages is too speculative to support his claim.

To sustain a claim for actual fraud, a plaintiff must demonstrate by clear and convincing evidence: 1) a false representation of material fact; 2) intentionally and knowingly made with the intent to mislead; 3) reliance by the misled party; and 4) damages resulting from such reliance. *Winn v. Aleda Constr. Co.*, 315 S.E.2d 193, 195 (Va. 1984). To sustain a claim for constructive fraud, a plaintiff must demonstrate the same elements, except that the false representation can be made innocently or negligently. *Howarth v. Rockingham Publ'g Co.*, 20 F. Supp. 2d 959, 970 (W.D. Va. 1998).

Assuming arguendo that Boyne can satisfy the first three elements of his fraud claims, his claims still fail because he cannot prove that WorldCom's misrepresentations caused him damage. Boyne's only evidence that but for WorldCom's representations he would have immediately sold all of his WorldCom stock is his own testimony. Like the district court, we find such speculation alone insufficient to demonstrate Boyne's reliance on the representations or damages suffered as a result of such reliance. We therefore affirm the district court's dismissal of Boyne's fraud claims.

## C.

Finally, we turn to Boyne's counterclaim for the tort of conversion, which he based on WorldCom's act of freezing his stock options. "Conversion is the wrongful assumption or exercise of the right of ownership over goods or chattels belonging to another in denial of or inconsistent with the owner's rights." *Economopoulos v. Kolaitis*, 528

S.E.2d 714, 719 (Va. 2000). A plaintiff cannot bring a claim for conversion unless he has a property interest in and is entitled to immediate possession of the converted item. *Id.* Moreover, in order to recover on a tort, "the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of [a] contract." *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998) (quoting *Foreign Mission Bd. v. Wade*, 409 S.E.2d 144, 148 (Va. 1991)).

The duty underlying Boyne's conversion claim arises from WorldCom's contractual duties under its Stock Option Agreements. Upon the vesting of Boyne's stock options, WorldCom was contractually obligated to deliver shares of stock at a specified price upon exercise by Boyne. Boyne essentially alleges that WorldCom breached that obligation by blocking him from exercising his options at the strike price, despite the fact that they had vested according to schedule. Because this duty exists solely by nature of WorldCom's obligations under the Stock Option Agreements, however, these allegations amount to a breach of contract claim. Therefore Boyne's conversion claim must be dismissed.

## IV.

Boyne entered into an agreement with WorldCom from which he obtained a substantial financial benefit. Because he breached that agreement, it would be unjust to allow him to retain its benefits. Boyne also attempts to recover a significant amount of damages by speculating that if not for WorldCom's statements about non-integration and its freezing of his unexercised stock options, he would have sold his WorldCom stock for a considerable profit. Such speculation is not sufficient to support his claims for damages. We therefore affirm the judgment of the district court.

*AFFIRMED*